## Miller v. Boyd et al.

*Wills — Construction — Ejusdem generis — Residuary gift of testator's belongings may carry real estate—Intestacy.*

1. The rule *ejusdem generis* is rarely applied to restrict the meaning of language contained in a residuary clause or to promote an intestacy.

2. The word "belongings" may comprehend any and all property owned or belonging to the testator.

3. Testatrix, after giving certain legacies, including one to her brother, Lew, her heir-at-law, enumerated certain items of personalty owned by her, including bank deposits, war stamps and Pennsylvania Railroad stock, and added these words: "Margaret Miller, Joe's wife, can have Penna. R. R. stock & she and Edith M. Boyd can do as they like with my other belongings:" *Held,* that these words were equivalent to a general devise and were sufficient to include, not only real estate, if any she possessed at the time of making the will, but any real estate subsequently acquired by her and belonging to her at the time of her death.

Case stated. C. P. No. 4, Phila. Co., March T., 1924, No. 6031.

*Jacob Singer,* for plaintiff; *Ralph B. Umsted,* for defendants.

McCULLEN, J., Dec. 19, 1925.—This is an action of ejectment, in which the parties have agreed upon a case stated, wherein the court is asked to decide the question of title to the real estate No. 828 South 48th Street, Philadelphia.

The plaintiff claims title through Annie L. Miller, now deceased, to whom the property originally belonged, and bases her claim upon an alleged partial intestacy of Annie L. Miller.

The defendants, who are in actual possession of the property, assert title as devisees of said Annie L. Miller, under the language of the residuary clause of her last will and testament, executed about five months before her acquirement of the real estate in question.

Whether, at the time of the execution of her will, Annie L. Miller owned real estate other than that involved in this proceeding does not appear.

On Oct. 15, 1919, she made her last will and testament in writing.

This act on her part creates the presumption that she intended by means of her writing to dispose of her entire estate: Miller's Appeal, 113 Pa. 459 (467); Reilly *v.* Kerestes, 70 Pa. Superior Ct. 71 (73).

Miller *v.* Boyd et al.

"When a will is executed, the reasonable and natural presumption is that the testator intends to dispose of his entire estate. There is no presumption of an intention to die intestate as to any part of his estate when the words used by the testator will clearly carry the whole. Therefore, in the construction of doubtful clauses in a will, that interpretation is to be adopted, if possible, which avoids a partial intestacy, unless it clearly appears that the testator intended to die intestate as to part of his property. The presumption against an intestacy is particularly strong where the subject of the gift is the residuary estate. An intestacy is a dernier resort in the construction of wills, and it has been said that the abhorrence of courts to intestacy under a will may be likened to the abhorrence of nature to a vacuum:" 28 Ruling Case Law, 227-228, § 189.

If, therefore, the words made use of by this testatrix can reasonably be construed to carry her whole estate, such construction should be adopted in order to carry out her presumed intent, it being borne in mind, however, that her heir-at-law is not to be disinherited save by express words or by necessary implication.

In her will, Annie L. Miller gives directions for the disposal of her body after death, provides for the care of the family burial lot, gives certain legacies, including one to her then surviving brother, Lew (her heir-at-law, through whom the plaintiff now claims the realty), enumerates certain items of personalty owned by her (including bank deposits, war stamps and shares of Pennsylvania Railroad stock), and concludes in these words: "Margaret Miller, Joe's wife, can have Penna. R. R. stock & *she and Edith M. Boyd can do as they like with my other belongings.*"

The defendants are Margaret M. Miller and Edith M. Boyd, thus named by the testatrix in this residuary clause of her will.

The plaintiff contends that the words "my other belongings" are not only restricted to personalty in their meaning, but that the association of the term "belongings" with the word "other," and preceded by an enumeration of certain articles, still further restricts the meaning of the term "belongings" to personalty *ejusdem generis,* and that as to all other property not specifically disposed of the testatrix died intestate.

The rule *ejusdem generis* is rarely applied to restrict the meaning of language contained in a residuary clause, or to promote an intestacy, and the word "belongings" has, we believe, a more comprehensive meaning than that ascribed to it by the plaintiff. It comprehends *any and all property owned by or belonging* to a person.

In the Century Dictionary, the noun "belonging" is thus defined: *"That which belongs to one;* used generally, if not always, in the plural—*(a)* qualities, endowments, faculties, *(b) property possessions, (c)* members of one's family or household, relations or dependents, *(d)* appendages."

In 1 Rawle's Third Revision of Bouvier's Law Dictionary, 335, there is this said in defining *belonging:* "To appertain to; to be the property of. *Property 'belonging'* to a person has two general meanings: (1) ownership; (2) the absolute right of user."

Blackstone, in his Commentaries, says (Book 2, chap. VII, at star page 105, Sharswood's Edition): "And hence it is, that, in the most solemn acts of law, we express the strongest and highest estate that any subject can have by these words: 'He is seized thereof in his demesne, as of fee.' It is a man's demesne, *dominicum* or property, since it *belongs* to him and his heirs forever."

In Jacobs's Estate, 140 Pa. 268, a testatrix, in her will, made no mention of real estate, but, after giving various pecuniary and specific legacies, provided: *"The remainder and residue of my money* I give and bequeath to the Protestant Episcopal Church in Philadelphia." Some of her heirs-at-law were not given anything by the will. Extrinsic evidence was admitted by the auditor to show that at the date of the will the testatrix owned no real estate, that her property then consisted mainly of mortgages and securities, and that by afterwards purchasing land she reduced her personal estate so that it would not pay her bequests in full. It was held that the testatrix intended to dispose of her estate to her legatees, excluding her heirs-at-law, that she had used the word "money" as the equivalent of "property," and that *land* would pass by the bequest "the remainder and residue of my *money;"* wherefore, funds arising from the sale of the real estate of the testatrix were awarded to the legatees.

In that case the auditor's conclusion was thus stated: "The auditor believing that the testatrix intended that all her estate should pass to her legatees in preference to her next of kin, and that (such) intention can be gathered from the four corners of the will, taken as a whole, construes the will so as to carry out that intention and distributes both funds to the legatees named therein."

The court below, in sustaining the auditor, said, *inter alia:* "We are unable by any process of reasoning to discover why the word 'money,' as here used, should be restricted to the personal property and not include the real estate also, for at the time and in the connection in which it was used it *clearly meant the residue of her 'estate' or 'property.'* And she evidently intended to treat her estate as 'money,' and by this term she may be regarded as meaning securities for money, and even real estate: Gaskell v. Harmon, 11 Vesey, 504."

On appeal to the Supreme Court, it was argued, *inter alia,* as follows on behalf of the appellant: "By the Act of April 8, 1833, § 10, P. L. 249, 4 Stewart's Purd. Dig., 5139, after-acquired real estate shall pass under a general devise, but it requires words indicating an *intention,* and there must be a writing by the statute of wills, and that means that from the *writing itself* the intention must be discernible. . . . The point of this case being that the will does not allude to the real estate, it is plain that it does not comprise it, but, as far as the personal property is concerned, it is comprised in the will, and as to it the will speaks from the date of the death." It was argued that the intention was to be gathered from the writing itself, that the will did not allude to real estate, and that the words made use of by the testatrix were not sufficient to indicate an intention to include lands, and, therefore, could not cover after-acquired real estate. The Supreme Court, however, affirmed the decree of the court below and said: "There are two things which can be gathered from this will with reasonable certainty: *(a)* That the testatrix did not intend to die intestate as to any portion of her estate; and *(b)* that she did not intend her heirs-at-law to take any benefit under her will or to have any share of her estate. . . . The first proposition appears from the fact that she disposed of *all the estate which she possessed at the time the will was made,* the residuary clause being sufficient to carry all that remained after payment of the legacies. The second proposition is manifest from the fact that *she excluded her heirs by the terms of her will from any participation in her estate, excepting in so far as she has given them small pecuniary legacies.* . . . We are dealing with the question of the intent of the testatrix to pass her entire estate under the name of money. A careful consideration of the will, gathered

from within its four corners, leaves no doubt in our minds that she intended all her property to pass by the residuary clause and to disinherit her heirs-at-law."

Counsel for the plaintiff cites Miller v. Bower, 260 Pa. 349, as weakening the effect of the decision in Jacobs's Estate.

We do not so view the matter. Mr. Justice Stewart, in announcing the decision in Miller v. Bower, stated, in effect, that to enable a will to be construed as operating upon subsequently-acquired real estate, a disposing intent on the part of the testator sufficiently comprehensive to include such real estate should affirmatively appear in the will itself, and, after referring to Jacobs's Estate, he distinguishes that case from the one then under consideration, saying: "There (in Jacobs's Estate) the court derived from the language of the will an intent to dispose of after-acquired realty, while here it is impossible to reach a like conclusion, regard being had solely to the written will." That the cases were quite different is manifest, for in Miller v. Bower the word "money" was used in direct connection with the expression "personal property," and in connection with a direction "to *invest*." This is the language quoted by Mr. Justice Stewart (at page 352) in stating the provisions of the will: "After the death of my sister, Amelia Miller, all *my mortgages and money and personal property* are to be given to my sister, Mary Louisa Miller Bower, for herself and two children, Louisa Miller Bower and Matilda Miller Bower, *to invest* as she thinks best for herself and two children above named." The word "money" thus used in connection with the expression *"personal property,"* and in connection with a direction *"to invest,"* clearly indicated that in meaning it was confined to personal estate and was not intended to include real estate. We find in Miller v. Bower nothing conflicting with the decision in Jacobs's Estate.

On the other hand, Jacobs's Estate has been referred to approvingly and followed in at least two cases, in Arnold's Estate, 240 Pa. 261, and in Ostrom v. Datz, 274 Pa. 375.

In the former case, a testatrix made use of this language: "My jewelry and other *personal things* are to be divided equally among my two sisters, Ella R. Arnold and Mary Arnold Babcock," she owning not only furniture, jewelry and clothing, but also corporate stocks and bonds and cash in bank. It was contended that, under the language thus made use of, the testatrix did not dispose of moneys or securities, but only of personal articles belonging to her—those of a purely domestic nature.

In the course of the opinion, delivered by the present Chief Justice, there was given this very cogent summary of authoritative rulings: "If so intended, the word 'things' may be given as extensive a meaning as the word 'effects' or 'goods' or 'assets' or 'property,' etc., and if it was so intended in the present will, then Anna H. Arnold disposed of her entire estate. In Jacobs's Estate, 140 Pa. 268, the word 'money' was construed to include real estate, and in the English case of Wright v. Shelton, 18 Jurist, 445, the phrase 'worldly goods' was given a like construction. Again, in Tofield v. Tofield, 11 East, 246, real estate was held to pass under the general words 'personal effects' following an enumeration of several items of things personal. Other English authorities along this line are stated by Judge Penrose in Pearson's Estate, 10 Dist. R. 189, and in Golz's Estate, 8 Dist. R. 647; also, see Williams on Executors, 1015."

In Ostrom v. Datz, 274 Pa. 375, the will contained this language: "And as to the *remainder of my money* which shall remain after the payment of my debts and funeral expenses and the aforesaid specific and pecuniary legacies,

Miller v. Boyd et al.

I give to the Home Missionary Society of the Presbyterian Church and to the Foreign Missionary Society of the Presbyterian Church in equal shares." Following Jacobs's Estate and Arnold's Estate, the court held that the testator's language was sufficiently comprehensive to cover and to carry the fee simple title to real estate, Mr. Justice Schaffer, in delivering the opinion, saying: "It is apparent *from the will before us* that in using the word *money* in the connection he did, testator intended to dispose of *all* his property remaining after the specific devise and bequests."

It is settled law that no particular form of expression is required to constitute a devise of real estate: Hackett v. Com., 102 Pa. 505.

Sections 9 and 10 of the Wills Act of June 7, 1917, P. L. 403, read as follows:

"Section 9. Every will shall be construed with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will.

"Section 10. The real estate acquired by a testator after making his will shall pass by a general devise, unless a contrary intention be manifest on the face of the will."

This is but a re-enactment of what was the existing law (Act of June 4, 1879, § 1, P. L. 88; Act of April 8, 1833, § 10, P. L. 249).

It seems clear that Annie L. Miller, by her testamentary writing, meant to dispose of all her property and estate of which she might die possessed, that she intended her heir-at-law (her brother, Lew, through whom the plaintiff now claims title) to have no interest in or participation in her estate other than to the extent of the legacy which she expressly gave him by her will; that in providing in the residuary clause that Margaret Miller and Edith M. Boyd "can do as they like with my other belongings," she meant and intended that they should have for their own use absolutely all her other property *belonging* to her at death which she had not disposed of to others named in her will; that those words are equivalent to a general devise, and are sufficient to include not only the real estate, if any, she possessed at the time of the making of the will, but any real estate subsequently acquired by her and belonging to her at the time of her death, when the will became operative.

The conclusion we have reached is that, upon the case stated, judgment should be entered in favor of the defendants, and it is so ordered.