## ESTATE OF ANNA B. JACOBS, DECEASED.

APPEAL BY T. H. B. JACOBS ET AL. FROM THE ORPHANS' COURT OF CHESTER COUNTY.

Argued February 11, 1891—Decided February 23, 1891.

[To be reported.]

1. As was said by Mr. Justice Rogers, in Bender v. Dietrick, 7 W. & S. 284, it is a maxim that an heir at law can be disinherited only by express devise or by necessary implication; and that implication has been defined to be, such a strong probability that an intention to the contrary cannot be supposed.

2. When it is manifest, from the provisions of a will, that a testatrix did not intend to die intestate as to any portion of her estate, and that in her will she used the word " money," in its popular sense as the equivalent of property, land may pass by a bequest of " the remainder and residue of my money."

(a) The will of a testatrix made no mention of real estate. After giving various pecuniary and specific legacies, she provided: " The remainder and residue of my money I give and bequeath to the Hospital of the Protestant Episcopal Church in Philadelphia." Some of her heirs at law were given nothing by the will.

(b) Extrinsic evidence was admitted to show that at the date of the will the testatrix owned no real estate, her property then consisting principally of mortgages and securities; and that, by afterwards purchasing land, she reduced her personal estate so that it would not pay more than half her bequests:

3. In such case, there being no doubt that the testatrix intended to dispose of her estate to her legatees, excluding her heirs at law, a distribution applying a part of the proceeds of sale of the after-acquired land to the discharge of the particular legacies, and awarding the remainder to the residuary legatee was affirmed.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 76 January Term 1891, Sup. Ct.; court below, number and term not stated.

Statement of Facts.

In the court below, *Mr. H. H. Gilkyson* was appointed auditor, to distribute a balance of a fund arising from personalty in the hands of John J. Kersey, executor of the will of Anna B. Jacobs, deceased, and also to make distribution of a fund arising from the sale by said executor, as trustee under appointment and order of said court, of the real estate of said testatrix.

The auditor reported on August 1, 1890, finding in substance the following facts:

The testatrix was a maiden lady of intelligence and refinement, with a fair knowledge of business affairs, and an equally fair capacity of managing her business. On March 21, 1882, seven years before her death, she made and executed her last will and testament, wherein she bequeathed a number of pecuniary legacies, aggregating $7,700, and several specific legacies of jewelry, silver-ware, furniture, etc.; and provided, further, as follows: "The remainder and residue of my money I give and bequeath to the Hospital of the Protestant Episcopal Church in Philadelphia." Some of her nearest relatives were not mentioned in the will and took nothing thereunder.

The will made no mention of any real estate, and, at the date of its execution, the testatrix owned none, her estate then consisting of personal property only, such as bonds, mortgages, securities and cash; it was sufficient, however, to pay in full all the pecuniary legacies given by her will. On March 2, 1886, two years and eleven months before her death, she purchased for the sum of $3,400, certain real estate in the borough of West Chester, of which she died seised, and from the sale of which the real estate fund before the auditor arose. After this purchase, she made no change in her will. There was no evidence that her relations toward her heirs at law and legatees, or any of the circumstances surrounding her, were changed, and, so far as appeared, she had the same reasons thereafter for preferring her legatees to her next of kin as the objects of her bounty, that she had in 1882.

The net proceeds of the decedent's personal estate amounted to $4,806.97, and the real estate fund for distribution amounted to $3,031.70. The heirs at law contended that the decedent died intestate as to her real estate; that the legacies given in her will were not a charge thereon, and that the fund arising from the sale of the realty should be awarded to them, to the exclusion of the legatees.

Arguments.

Citing Bender v. Dietrick, 7 W. & S. 287; Baker's App., 115 Pa. 593; Hancock's App., 112 Pa. 532; Crisswell v. Grumbling, 107 Pa. 408; Hofius v. Hofius, 92 Pa. 307; Linnard's Est., 24 W. N. 492; Wiltberger's Est., 24 W. N. 493; and distinguishing Howe's App., 126 Pa. 233, the auditor reported as his opinion that the testatrix intended that all her estate should pass to the legatees named in her will, in preference to her next of kin, and that the will sufficiently manifested such an intent; that the word "money," in the residuary clause, was evidently meant to include all that she was worth, and was used in its popular sense as comprising every kind of property; that, to construe it literally, would be to over-ride her intention and destroy the whole scheme of the disposition of her property; and that the will must be construed so as to carry out her intention. The auditor, therefore, awarded the fund arising from the real estate to the legatees, reporting a schedule of distribution by which, after applying the personalty to the particular legacies and awarding payment of the remainder of said legacies out of the realty, the residue of the latter fund, amounting to $162.45, was awarded to the residuary legatee.

Exceptions to the report of the auditor filed with and overruled by him, and afterwards renewed before the court, were dismissed after argument, HEMPHILL, J. Thereupon, Thomas H. B. Jacobs and others, next of kin and heirs at law of the testatrix, took this appeal, specifying that the court erred:

2. In applying the proceeds of the real estate to the payment of legacies.

4. In dismissing the exceptions to the auditor's report.

5. In not awarding the proceeds of the real estate to the decedent's heirs at law.

7. In admitting or considering any testimony to show the quantum of the personal estate, at the date of the will, and at the time of the decedent's death.

*Mr. R. C. McMurtrie* (with him *Mr. A. S. Ashbridge, Jr.*), for the appellants:

1. If the personal estate had proved sufficient, in this case, to pay the legacies, it will not be disputed that the land would have gone by descent to the heirs. The question, then, is

Arguments.

whether the fact that there is a deficiency of personalty, by itself and standing alone, is evidence of an intention to dispose of the real estate. The position of the residuary legatee is, that, while the personal estate is the primary fund for payment of legacies, the real estate is always chargeable if there is a deficiency. If this is the rule, how could it be possible to raise a debatable question as to the liability of the real estate? And why resort, as this court has done in a number of cases, to the doctrine that the land is made liable by a blending of real and personal estate, if it is liable without the blending, and merely because there is a deficiency?

2. The true rule is, that the question is one of testamentary intention, and the mere fact that the personalty proves insufficient to pay the legacies, does not evidence any intention to charge the land with it. Such an intention must appear in the will, and it is not implied by the intention to give the legacy. This rule was settled before the revolution, and the early English cases supporting it are just as binding as our own decisions: Davis v. Gardiner, 2 P. Wms. 188; Thompkins v. Thompkins, Prec. in Ch. 398; Myssen v. Gretton, 2 Y. & Coll. Exch. 222; Greville v. Browne, 2 H. L. 696; Roper on Leg., 448; 2 Jarman on Wills, 607. It is supported by the language of all our own cases: Nichols v. Postlethwaite, 2 Dall. 131; Commonwealth v. Shelby, 13 S. & R. 348; Hassanclever v. Tucker, 2 Binn. 525; Witman v. Norton, 6 Binn. 395; English v. Harvey, 2 R. 305; Brookhart v. Small, 7 W. & S. 229; Clery's App., 35 Pa. 55; Bradford v. Bradford, 6 Wh. 236; Blake's Est., 134 Pa. 240. It is impossible to say what Riley's App., 34 Pa. 291, decides.

3. We do not deny that, for the purposes of this case, the will must be assumed to have been executed at the hour of death. But what is the result of reading it so? The testatrix, having land, gives certain legacies and says not a word about the land. She was presumably aware that the personalty might not suffice to pay the legacies, and that the rule of law requires an intent to devise land to be expressed. She omits to express any such intention. It was claimed that the court could look at the quantum of the estate, to ascertain whether there was such an intention; but this is utterly inadmissible: Kellett v. Kellett, Ball. & B. 542, and cases there

cited; to which may be added Doe v. Buckner, 6 T. R. 610, and the opinion of Lord HOLT cited in Ambler, 40. The artificial rule of construction that a will shall speak from the date of death, introduced by § 1, act of June 4, 1879, P. L. 88, can have no possible bearing, as it is limited by its own terms to the personal and real property comprised in the will, and this will does not mention and therefore plainly does not comprise the real estate.

4. Nor does § 10, act of April 8, 1833, P. L. 249, providing that after-acquired real estate shall pass by a general devise, have any application in this case, as the will contains no general devise. We are left, then, to the common-law rules of construction; and it is a well-settled principle that the heirs cannot be disinherited, except by a clear intent to do so, fairly deducible from the will as written, and this principle is of equal if not greater force than the rule that the law leans against an interpretation which would produce a partial intestacy : French v. McIlhenny, 2 Binn. 19; Clayton v. Clayton, 3 Binn. 476; Rupp v. Eberly, 79 Pa. 141; Bender v. Dietrick, 7 W. & S. 284; Howe's App., 126 Pa. 233; Joyce's Est., 13 W. N. 520; Okeson's App., 59 Pa. 99; Wright v. Page, 10 Wheat. 204; Wilkins v. Allen, 18 How. 385; Bradford v. Bradford, 6 Wh. 236. Again ; real estate purchased, as this was, after the date of the will, would not pass even under a general devise, at the common law. The residue given by this will is specially limited to money, and the widest interpretation ever given to that word is that it may include all personal property.

Mr. *Henry Pleasants, Jr.*, and Mr. *Alfred P. Reid* (with them Mr. *William T. Barber*, Mr. *Hampton L. Carson*, Mr. *R. Jones Monaghan* and Mr. *J. Frank E. Hause*), for the appellee:

There is but one question for determination : Did the testatrix intend to dispose of her entire estate, and is that intention deducible from her will?

1. That she did intend to make such a disposition, and to exclude the appellants, is a proposition not to be denied. And the will did dispose of the entire estate which she had at its date. Her beneficiaries were carefully named, and she had an estate just sufficient to meet her testamentary wishes. After purchasing the real estate, with a part of the money that she

Opinion of the Court.

had already disposed of in the will, she was content to let its provisions remain as they were written, and to die satisfied that she had done what she intended to do, with the certain knowledge that the personalty remaining would pay but half her bequests.   There is no presumption of an intent to die intestate, as to any part of the estate, when the words of the will will carry the whole: Raudenbach's App., 87 Pa. 54. Nor will a construction be adopted that would destroy the whole scheme of distribution: Earp's Will, 1 Pars. 458.

2.  The value of the estate, the character of the disposition, the family, relatives and friends of the deceased, and the general scheme of the will, are all entitled to consideration in reaching the intention: Earp's Will, 1 Pars. 458; Postlethwaite's App., 68 Pa. 477.   Real estate may pass under the word money, when it is apparent from the whole will, in the light of the facts, that such was the testator's intention: 2 Jarman on Wills, 379; Stooke v. Stooke, 35 Beav. 596; Gaskell v. Harman, 11 Ves. 504; Miller's Est., 48 Cal. 165; Widener v. Beggs, 118 Pa. 378; Hofius v. Hofius, 92 Pa. 307; Smith v. Davis, 1 Gr. 158.   Nor is it necessary that the ascertainment of an intention to make legacies a charge on land should rest on direct expression: Gilbert's App., 85 Pa. 350. This may result from the fact that the will as a whole evinces an intention to pay the legacies, and that to do so resort must be had to the real estate: Linnard's Est., 24 W. N. 492; Wiltberger's Est., 24 W. N. 493.

OPINION, MR. CHIEF JUSTICE PAXSON:

The question here is, whether the real estate of the testatrix passed under the residuary clause of her will.   At the time it was executed her property consisted only of personal estate. At the time of her death she was seised of real estate amounting in value to nearly as much as her personal estate.   After giving several pecuniary legacies, and one or more specific legacies, she disposed of her residuary estate as follows: " The remainder and residue of my money I give and bequeath to the Hospital of the Protestant Church in Philadelphia."   There is no mention of real estate in the will, which may be accounted for by the fact, before stated, that when she executed it she owned none; nor did she for some years thereafter.

Opinion of the Court.

There are two funds for distribution; the one arising from the conversion of the personal property, and the other from the sale of the real estate. The latter was claimed for the heirs at law, upon the ground that it did not pass by the will, and that as to such real estate the testatrix died intestate. It is further to be observed that at the time the will was made she had sufficient personal estate to pay all the legacies, but that, by reason of her purchase of the real estate, the personal estate was so much diminished that it will only pay about fifty per cent of such legacies.

It was said by Justice ROGERS in Bender v. Dietrick, 7 W. & S. 284: "It is a maxim which applies here, as well as in England, that an heir at law can only be disinherited by express devise or necessary implication ; and that implication has been defined to be such a strong probability that an intention to the contrary cannot be supposed." This is the rule which must govern this case. There are two things which can be gathered from this will with reasonable certainty. They are : (*a*) That the testatrix did not intend to die intestate as to any portion of her estate ; and (*b*) that she did not intend her heirs at law to take any benefit under her will, or to have any share of her estate. The first proposition appears from the fact that she disposed of all the estate which she possessed at the time the will was made, the residuary clause being sufficient to carry all that remained after payment of the legacies. The second proposition is manifest from the fact that she excluded her heirs by the terms of her will from any participation in her estate, excepting in so far as she has given them small pecuniary legacies.

What, then, did the testatrix intend by the residuary bequest of the "remainder and residue of my money?" The word "money," literally, means cash ; and, if we adopt this interpretation, nothing passed by this clause. It was conceded, however, that this word was the equivalent of property. It was contended by the appellant that it included only moneyed securities, and perhaps other personal estate. That the word "money" is popularly known and used as indicating property of every description is well known. Thus, it is very common to refer to a person as a "moneyed man" because of his large possessions. Yet those possessions may consist exclusively of real estate. It appears very plain to us that this testatrix used

the word "money" in its popular sense as the equivalent of property, and that she intended all her estate to pass by the residuary clause. She knew of what her estate consisted when she made her will. She knew it would satisfy all the pecuniary legacies, and leave a small residue; and if we construe the will as of the time of her death, it is most unlikely she intended the legacies she had given to those who were evidently the first objects of her bounty, should be cut down by one half in favor of her heirs at law whom she never intended to derive any benefit from her estate. We are not considering the case of an attempt to charge real estate because of a deficiency of the personal estate to pay the legacies, and where the same are not charged upon the land. Were such the case, a discussion of some of the authorities cited might become necessary. On the contrary, we are dealing with the question of the intent of the testatrix to pass her entire estate under the name of money. A careful consideration of the will, gathered from within its four corners, leaves no doubt in our minds that she intended all her property to pass by the residuary clause, and to disinherit her heirs at law.

> The decree is affirmed, and the appeal dismissed, at the costs of the appellants.