## James Woodside's Estate. Appeal of Alice J. Jarvis and James Corbett, Executors.

*Will—Partial intestacy—Decedents' estates.*

A partial intestacy is not to be presumed if the words used will carry the whole estate, and a construction is to be given a will which will avoid a partial intestacy, unless the contrary is unavoidable.

A farmer engaged in the business of buying and pasturing cattle for market, which business he conducted until his death, left a will by which he directed that his debts and pecuniary legacies should be paid from the proceeds of the sale of his real and personal property on the east side of a creek. He specifically devised to two persons the western portion of his land, giving to the first devisee a certain farm, and to the second devisee the other lands and the personal property thereon. He enumerated the kinds of personal property as cows, horses and hogs, household furniture, etc. Certain cattle had been pastured on both sides of the creek, but four months before testator's death they had been taken to his barns on the west side to be fattened for market. These cattle formed a large part of his personal estate. *Held,* that the testator did not die intestate as to the cattle which had been removed to the west side of the farm, but that they passed to the devisee mentioned in the residuary clause.

Argued April 25, 1898. Appeal, No. 306, Jan. T., 1897, by Alice J. Jarvis and James Corbett, executors, from decree of O. C. Crawford Co., Feb. T., 1894, No. 43, sustaining exceptions to auditor's report. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to auditor's report.

The auditor, D. C. McCoy, Esq., reported the facts to be as follows:

James Woodside, farmer and mill owner, a resident of Rockdale township, in said county of Crawford, and the possessor of quite a property, both real and personal, on May 10, 1890, made his last will and testament, written by himself, as follows:

" Millers Station Crawford County State of Pennsylvania May 10th 1890 I James Woodside of county & state above Mentioned Do make this my Last Will and testiment revoking all former wills

" I give mrs Jane Cutchall Five hundred dollars

" I give mrs S F Langley the ten acres that I Bought of Henry Langley & wife Land Situated in Cambridge Township to have and to hold in fee Simple

" I give & bequeeth to Gerome Eddy & wife all money that may be due me on Bond & morgege after a settlement of all acts is apply on Bond & morge

" I give to my Sister Sharlott Ferris five hundred dollars

" I give to Gilbert Ferris & wife any amt they may owe Me on Bond & morge or note act &c

" I give & Bequeth my Sister mrs Elen Fleek one thousand dollars and what may owe me

" I give to my Sister Loretta Saeger one thousand dollars

" I give to my Bro Robert Woodside five hundred dollars and what he may owe me

" I give my Bro Chester Woodside five hundred dollars

" I give my Bro deece Mark Woodsid heirs five hundred dollars

" I give to Frank Decker five hun dollars of what he ows me He Said Decker to pay any ballance he may owe me to Mrs Charles Borgis

" I give and Bequeth to mrs mary Borgis the ballance of what Frank Decker may owe me and one thousand dollars

" I give to my Bro Wm Heirs what is my due from estate one thousand dollars

" I give to my Sister Jane Parker all I hold clames against Daniel Parker and five hundred dollars

" I give five hundred dollars to the Rockdale Cemitree

" I give Adolph Parker fifteen hundred Dollars

" I lease during his life time to C H Richards the use of

what land and house & Barn not acede two acres that he now ockopies he must stay on the land or lease is forfieted

" now the above gifts & Bequeth is to Be paid by Sale of the mill property and all lands that is on the East Side of French creek in Rockdale Town Ship with this provision that all Pursonable property that is on the East Side of french creek at my deace after pay all my Debts accept what is herein after mentioned is to pay the gifts above made if when sold if their is enough to do so if not pay in propoton and if their is any over money after Pay the above Bequeth then any ballance to be divided Eaquel Between my living Newfews & nieces

" on the west Side of French Creek to be

" I give and Bequeth to Emma Corbet my adopted doughter or I call her So what is Know as the farm I bought of John George containing about one hundred and fifty acris She is to pay all money I may owe her husbun James Corbett at my deace to have and to hold in fee simple

" I now. Give and Bequeth to my Sisterinlaw Mis Allace J Jarvis all other lands I may own on the west Side of French creek Knows as the miller Farm alls the wing Island and all personable Property   Such cows Horses hogs house hole Furniture all farm tools  wagons &c that may on the farm   She to pay James Parker Wife Five hundred dollars to have and to hold in fee simple I concider it as land or money left me by my late wife and realey should go to my late wife family and I now appoint Miss Alleace J Jervis and James Corbett to be my Executors of My afects and have five years to Settle up My this last will and testiment with full Power to sell any lands at any time on the east side of French creek.

" JAMES WOODSIDE."

James Woodside died January 14, 1892.

His will was probated January 20, 1892, and on the same day letters testamentary were issued to the executors named in the will.

At the time the testator died, he had in Rockdale township on the east side of French creek from 500 to 600 acres of land. On this land or some parts of it were a gristmill and sawmill, with other improvements, and personal property of different kinds.

On the west side of French creek in the township of Rock-

dale, he owned a farm which he bought of John George. He also owned a farm on the west side of French creek, the title to which came from Isaac Miller known as the Miller farm. He also owned about thirty-five acres of land in the same township, immediately north of, and adjoining the Miller farm. The title to this piece was derived from one Jededia Hall.

The testator was a widower without children, and Miss Alice J. Jarvis, the sister of his deceased wife, was his housekeeper. The Miller farm was his place of residence. A part of his business was raising or buying cattle, and fattening them for the New York market. This was done on the Miller farm, where he had barns for the housing of the cattle, and the necessary apparatus for preparing feed for them during the fattening process. As to the care of the cattle intended for the market as above stated when in pasturage, the facts, as nearly as I can ascertain therein from the evidence, statements and admissions of the counsel on each side, are that the cattle were pastured on his lands on both sides of French creek, as was most convenient.

At the time the testator died he had on the Miller farm over 100 head of cattle in preparation for market, some of them already fitted therefor. The testator had himself a few days before his death procured two cars, to be sent to Miller's station immediately joining the Miller farm, for the purpose of shipping a part of the cattle to market. The cars were on the siding when he died; and were loaded and sent to New York before he was buried. The cattle so sent were sold in New York and the proceeds thereof turned over to the executors or to Miss Jarvis, one of them. The remainder of these cattle or most of them, three more cars, were sent to market soon after, and the balance were retained until the following winter, prepared for market and marketed in the same way as the former two carloads.

During the intervening summer these cattle were pastured, or in a large part at least, on the lands of the estate of the testator on the east side of French creek, and the price of such pasturing charged by executors in their account.

I state the fact as to the pay for this pasturing, on the testimony of Miss Alice J. Jarvis, which is not rebutted, and I find an item of money received from her in the account of $230. That, while it does not say so, is presumably it.

.These cattle were prepared for and sent to market, and sold in the same way as the others.  The entire sum received for these cattle was $5,866.66, the money being received by Miss Alice J. Jarvis, one of the executors.

This item of $5,866.66 is not charged to the executors in the account; and its not being so charged is the ground of the sixth exception—the only contest now before the auditor.

The contention of the exceptants is that, as the will is silent as to the thirty-five acres adjoining the Miller farm, and as the will is also silent as to the cattle being fattened on the Miller farm, and does specify certain articles of personal property on the Miller farm, as bequeathed to Miss Alice J. Jarvis, that, as to the thirty-five acres above mentioned, and the proceeds of the fat cattle, there is an intestacy, and therefore the proceeds of the said cattle belong to the heirs at law of the testator.

The contention on the other hand is that the proceeds of the sale of said cattle belong to Miss Alice J. Jarvis; in other words, that the bequest to her entitles her to all the personal property, on the Miller farm, belonging to the testator at the time of his death; that the will disposed of the entire estate, that there was no part of it of which there was an intestacy.

The auditor found that there was no intestacy, and awarded the proceeds of the sale of cattle to Miss Jarvis.

The court sustained exceptions to the auditor's report.

*Errors assigned* were in sustaining exceptions to auditor's report.

*F. P. Ray,* with him *F. W. McArthur,* for appellants.—An intestacy is not to be presumed unless it be unavoidable: Appeal of Board of Missions, 91 Pa. 507; Reimer's Est., 159 Pa. 212; Raudenbach's App., 87 Pa. 51; Hofius v. Hofius, 92 Pa. 305; Sweitzer's Est., 142 Pa. 541.

*Sion S. Smith,* with him *Humes & Prather,* for appellees.

OPINION BY MR. JUSTICE FELL, October 17, 1898:

The only question raised by this appeal is whether the testator died intestate as to certain cattle which at his death were in his barns on the west side of French creek.  This creek divided

his lands into two nearly equal parts, and he made it a division line in disposing of his estate.  His purpose to devote his property which was on the east side of the creek to the payment of debts and pecuniary legacies, and to give that on the west side to his adopted daughter and sister-in-law clear of all claims, he made very plain.  After making a number of pecuniary legacies he directed that they should be paid from the proceeds of the sale of his real and personal property situate on the east side of the creek, and he provided that in the event of a deficiency of assets after the payment of debts the legacies should abate proportionately, and that if there should be a surplus it should be divided equally among his nephews and nieces. He then came to the second branch of his will.  Having exempted his property on the west side of the creek from the payment of debts and legacies he disposed of it, first by giving a farm to his adopted daughter, and then by giving all other lands and the personal property thereon to his sister-in-law.

The last clause of the will is in effect a residuary clause. He had before disposed of all his property real and personal on the east side of French creek, and of one farm on the west side, and had provided plans for distribution in case there should be either a deficiency or a surplus.  He commenced the clause with the words, " I now give and bequeath," which in their connection indicate an intention to make a final disposition of the remainder of his property, and he proceeded to dispose of all other lands which he owned and all personal property thereon.  His enumeration of the kinds of personal property, "such as cows, horses, hogs, household furniture, all farm tools, wagons, etc., that may be on the farm," raises the only doubt as to his intention.  If this had been omitted his meaning would have been very clear.  But this enumeration, following general words which include everything, and in a clause which is in its character residuary, does not, we think, exclude the cattle in question.  These cattle had been pastured on the testator's farms on both sides of the creek, and four months before his death they had been taken to his barns on the west side to be fattened for market.  This had been done in the regular course of his business.  For several years he had bought cattle which he pastured on all of his farms during the summer and fattened in his barns on the west side during the winter.

He was engaged in this business when the will was written, and continued in it without interruption until his death. The cattle in question constituted a large part of his personal estate, and it cannot be supposed that he either overlooked them in making his will or that he intentionally omitted them from the disposition he made. He was an uneducated man, entirely unskilled in the use of language, and his intention can be better reached by considering the general plan and purpose of his will, which he succeeded in making clear, than by a critical examination of the words and phrases which he used.

A partial intestacy is not to be presumed if the words used will carry the whole estate, and a construction is to be given a will which will avoid a partial intestacy unless the contrary is unavoidable: Reimer's Estate, 159 Pa. 212, and cases there cited. There is nothing in the will to indicate an intention that it was not to speak and take effect as if executed immediately before the death of the testator, but its general scheme and expression are in harmony with the construction provided for by the Act of June 4, 1879, P. L. 88.

The decree of the orphans' court is reversed and set aside, and the report of the auditor is confirmed.