## Ingham's Estate.

Argued April 16, 1934. Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Harold Evans,* of *MacCoy, Evans, Hutchinson & Lewis,* for appellant.

*Bertram Bennett,* with him *Harry L. Jenkins,* for appellee.

OPINION BY MR. JUSTICE DREW, May 21, 1934:

Annie V. Ingham died December 4, 1931, unmarried and without issue, leaving to survive as next of kin eight first cousins. By the final dispository clause of her last will and testament, which she drew herself, she provided that, "What is left of my money after my debts are paid, I wish given to The Baptist Home, on the Roosevelt Boulevard, Pennepack Circle." At the date of her death, her estate consisted of about $2,200 in cash, stocks and bonds appraised at approximately $24,000, and the remainder interest in a trust established by her father's will (see Ingham's Est., 17 D. & C. 251), valued at nearly $13,000. The sole question presented for our de-

termination is: How much of this estate did the testatrix intend to dispose of by the above quoted clause? What meaning is to be given to the words "my money"? Testimony was produced at the audit of the executrix's account to show that the testatrix always used the words "my money" to refer to her own property, as distinguished from her father's estate, and that she did not know that she was entitled to the corpus of the trust estate in the event that she died without issue. The learned auditing judge so found, but held that the clause in question was residuary in nature, and that the testatrix therein disposed of the entire balance of her estate, including that which she did not know she possessed. He therefore awarded to the Baptist Home the residue remaining after the payment of debts and the satisfaction of certain pecuniary bequests and specific legacies contained in prior clauses of the will. Exceptions filed by three of the next of kin were dismissed by the court below, and the adjudication confirmed absolutely. From the decree thus entered, Mary H. Ingham, one of the next of kin and the executrix under the will, took this appeal. She contends that the words "my money" should be construed in the strict sense of cash and bank deposits, that neither the context of the will nor the surrounding circumstances require that they be given a broader meaning, and that in no event can the words be construed to cover the testatrix's remainder interest in the trust, on the ground that the will cannot operate to pass property which she did not know she owned.

The opinions filed by the learned auditing judge and by the court below so fully and conclusively answer appellant's contentions that little more need be said. It is sufficient to point out that under our cases the word "money," when used in a will, is to be construed in the broad sense of wealth or property, instead of in its narrow sense as cash, only where the context of the will and the circumstances surrounding its execution require that it be so interpreted in order to give effect to the testa-

tor's intention: Jacobs's Est., 140 Pa. 268; Levy's Est., 161 Pa. 189; Dodson's Est., 253 Pa. 344; Ostrom v. Datz, 274 Pa. 375; Talbot v. Anderson, 292 Pa. 454; Williamson's Est., 302 Pa. 462; see Arnold's Est., 240 Pa. 261. Here it is apparent that the testatrix employed the word in its wider sense. Although the will contains pecuniary legacies totaling $7,000, and there is no source indicated from which they are to be paid, at the time it was executed the testatrix's bank deposits amounted to only $3,100. The inference is unavoidable that she considered all her property as a single, consolidated mass, intending that her personal property not specifically bequeathed should be converted into cash and the pecuniary legacies paid from the fund thus established. Moreover, as the learned auditing judge found, and the evidence on this point is uncontradicted, the testatrix was accustomed to use the words "my money" to refer to all the property which she owned absolutely. Hence, when she employed these words at the end of her will, the natural location of a residuary clause, there can be no doubt that she meant thereby to dispose of the entire residue of her estate after the payment of her debts and the satisfaction of the legacies enumerated in the preceding clauses.

Under this construction of the will, appellant's argument that there is an intestacy as to the testatrix's interest in her father's estate is unsound. It is a well settled rule of construction that a will is not to be interpreted so as to produce an intestacy as to any part of the testator's estate, if it may reasonably be construed so as to avoid such a result: Reimer's Est., 159 Pa. 212; Woodside's Est., 188 Pa. 45; Fuller's Est., 225 Pa. 626; Worst v. DeHaven, 262 Pa. 39; Ostrom v. Datz, supra; Biles v. Biles, 281 Pa. 565; Buechley's Est., 283 Pa. 107. On the other hand, as appellant points out, it is true that this rule, often referred to as a presumption, is of no greater force and effect than the similar rule that an heir is not to be disinherited except by plain words or

necessary implication: Howe's App., 126 Pa. 233; Schmidth's Est., 183 Pa. 641; Schaner v. Wilson, 207 Pa. 550; Watson v. Martin, 228 Pa. 248; Grothe's Est., 229 Pa. 186. But there is no room for the application of this second canon of construction where, as here, the will contains a residuary clause, thus clearly evidencing the intention of the testatrix to dispose of the entire balance of her estate. Such a clause must be construed as passing all that the testatrix possessed, whether she was aware that she owned it or not. Indeed, one purpose of a general residuary clause is to dispose of such things as may have been forgotten or overlooked, or may be unknown: Ireland v. Foust, 56 N. C. 498. A similar argument to that made on appellant's behalf—that since she did not know she owned this property, she could not have intended to pass it by her will—was put forward in Smith v. Dugan, 145 N. Y. App. Div. 877 (affirmed per curiam 205 N. Y. 556). In rejecting the contention, the court said, quoting from Floyd v. Carow, 88 N. Y. 560, "A general residuary devise carries every real interest, whether known or unknown, immediate or remote, unless it is manifestly excluded. The intention to include is presumed, and an intention to exclude must appear from other parts of the will, or the residuary devisee will take." In the cases relied on by appellant where it was held that property not specifically mentioned in the will was not included by general words but went to the testator's heirs by intestacy (Levy's Est., supra; Miller v. Bower, 260 Pa. 349; Fleck v. Harmstad, 304 Pa. 302), the will contained no general residuary clause; hence they are not in point. We conclude, therefore, that the balance of the testatrix's estate, including the remainder interest in her father's estate, was properly awarded to the Baptist Home.

The decree of the court below is affirmed; costs to be paid by appellant.