## Fahler, Administratrix, etc., v. Simpson

174

*Bernard Naef*, for petitioner.

HENNINGER, P. J., September 27, 1948.—Plaintiff filed a petition for a declaratory judgment based on the following facts:

1. James Simpson during his lifetime acquired a certain lot or tract of ground, with garages erected thereon, located on the west side of Hazel Street between Washington and Green Streets in the City of Allentown, Pa., containing in front on Hazel Street 45 feet and in depth of equal width 63 feet. Said deed is duly recorded in the office of the recorder of deeds in Deed Book Vol. 267, page 783.

2. Ida V. Simpson is the widow of James Simpson, deceased, and presently resides at 5718 Twentieth Avenue South, Gulf Port, St. Petersburg, Fla.

3. Norman Simpson is the only child of James Simpson, deceased and presently resides at 103 Tracy Street, Sparta, Tenn.

4. Title to said real estate was taken in the name of James Simpson and Carolina Simpson, husband and wife.

5. Caroline Simpson died May 3, 1926, at which time title vested in James Simpson as survivor.

6. James Simpson on September 17, 1938, wrote in his own hand and executed a will whereby, after revoking all former wills and providing for payment of debts, he provided as follows:

"I bequeath unto my son, Norman Simpson, the sum of $5.00 and all the rest, residue and remainder of my Estate personal or mixed, of whatsoever nature or kind or, wheresoever situated at the time of my decease, I do hereby give, devise and bequeath all of the afore-

said to my next and best friend, Miss Ida V. Rabert, now of Rockwood, Tenn. formerly of Allentown, Penna. All of the aforesaid, including insurance and lodge moneys".

7. James Simpson entered into marriage with Ida V. Rabert, now Ida V. Simpson, on May 25, 1943.

8. On December 26, 1947, James Simpson departed this life.

9. Ida V. Simpson, referred to in James Simpson's will as Ida V. Rabert, renounced her right to letters testamentary and requested the appointment of Elsie Fahler to act in her stead and on April 7, 1948, Elsie Fahler, also known as Elsie C. Fahler, was duly appointed administratrix c. t. a. of the estate of James Simpson, deceased.

The petition asks this court for a determination of the respective interests of petitioner and of respondents in the real estate mentioned in paragraph 1.

Norman Simpson, a resident of Sparta, Tenn., although served by registered mail with a copy of the petition, has filed no answer, thereby admitting the above facts.

The failure to serve Ida V. Simpson in the first instance is cured by her voluntary joinder and submission to this court, especially in light of an adjudication in her favor.

### Discussion

This declaratory judgment raises two questions:

1. Is the will of James Simpson operative because of his marriage after its execution?

2. Does the residuary clause of that will devise to Ida V. Simpson a fee simple title to the real estate of which James Simpson died seized?

The first question is easy of solution. The Wills Act of June 7, 1917, P. L. 403, sec. 21, 20 PS §273, applies to this situation because decedent died on December 26, 1947, five days before the effective date of the Act

of 1947, P. L. 89, 20 PS §180.7(3). While the Act of 1947 clarifies the situation, the net result is the same under the Act of 1917, as interpreted by appellate decisions.

The Act of 1917, supra, provides that "when any person, male or female, shall make a last will and testament, and afterward shall marry, . . . and shall die, leaving a surviving spouse . . . every such person, so far as shall regard the surviving spouse, . . . shall be deemed and construed to die intestate . . .".

In Lintner's Estate, 297 Pa. 428, 430, it was held that section 21 of the Act of 1917, supra, was enacted for the benefit of the surviving spouse—or afterborn children—and not for the benefit of those who might gain by an intestacy, and that if the surviving spouse did not choose to challenge the will made before marriage no one else could do so.

While the Lintner case referred to a surviving husband, a fortiori it applies to a surviving wife, who is not to be prejudiced by a favorable will executed prior to her marriage to decedent. In fact, it was so decided in Fidelity Ins. Trust Company's Appeal, 121 Pa. 1, 17. While the latter case construed section 15 of the Wills Act of April 8, 1833, P. L. 249, that act was identical with the Act of 1917, supra, excepting that the Act of 1833 applied only to widows and not to "surviving spouses".

The widow is entitled, therefore, to the benefit of all provisions made for her under the will of James Simpson, despite the fact that the will was executed prior to his marriage to her.

The question of the quantum of the widow's benefit under the Simpson will is a more difficult one. In deciding the question we bear in mind six facts: (1) The nominal gift to his son is an indication that decedent did not intend his son to have a substantial share in his estate; (2) the will was written by dece-

dent himself and apparently without advice; (3) the clause to be interpreted is a residuary clause and there are no other attempts to dispose of the property in question; (4) the difficulty arises through the omission of the word "real" in the usual comprehensive residuary clause and not by reason of the use of any inconsistent or contradictory language; (5) the word "devise" is the apt word for a gift of real estate, and (6) the words "personal and mixed" are descriptive of the residue and not necessarily definitive as the words "of personal and mixed" might have been.

Where a testator has chosen to employ a residuary clause in the disposition of his estate, such a clause is to be interpreted liberally to effect a complete disposition, if possible: Bricker's Estate, 335 Pa. 300, 303; Ingham's Estate, 315 Pa. 293, 297; Buechley's Estate, 283 Pa. 107, 109.

The absence of words clearly indicating that real estate is to pass under a residuary clause does not prevent its being included through the use of inapt words ordinarily not applicable to real property. In Jacob's Estate, 140 Pa. 268, the court held that the word "money" as used in a residuary clause was intended to include real estate. In Swentzell's Estate, 294 Pa. 261, "all the rest and residue of my personal estate . . . not hereinbefore given and disposed of" was held to include real estate. On the other hand in Beuchley's Estate, supra, a bequest of "all the remainder of my estate" followed by a clause "I will all my property real estate to my son" did not confine the son to real estate, but gave him the personal estate as well. In Ingham's Estate, supra, the word "money" in a residuary clause was held to include testator's real estate and in Bricker's Estate, supra, the word "balance" was held to include real estate as well as personalty.

Bruckman's Estate, 195 Pa. 363, is a case apparently contrary to the above. In that case the will provided, "I give and devise to my wife Carrie Bruckman the house No. 925 Penn Street and the one-half residue of my personal estate", with other provisions for another house and the other one half of the personal estate and no mention at all of a third house. The court held that the words "personal estate" could not under the circumstances be enlarged to include the unmentioned real estate. That case is distinguished from ours in that a distinction is made in the will itself between real estate and personal property. Furthermore, the disposition is "of personal property" and not as in our case the use of the word "personal" merely as a partial and incomplete description of the property to be covered by the residuary clause.

Also to be distinguished is Howe's Appeal, 126 Pa. 233, in which the residuary clause read in part, "I do order that all my property consisting of bonds, mortgages, ground rents, stocks and personal effects in the State of Pennsylvania be sold, etc." The court held that the itemization was definitive of the kinds of property contemplated in the residuary clause and that, especially since ground-rents were real property, all other real property was excluded. We distinguish that case from ours because the itemization was of specific kinds of property and not in such generic terms as "personal or mixed" as in our case. Furthermore, we are convinced that the absence of the word "real" in the Simpson will was inadvertent and that it was the clear intention of testator to dispose of his entire estate in his residuary clause.

We attach some little, but not too much, significance to testator's use of the word "mixed". While the word has some reference to real property, we do not consider it broad enough to include real property. Its use, however, convinces us that testator attempted to write a

comprehensive residuary clause and inadvertently omitted the word "real". While we cannot write into his will what is not there, nevertheless, for the reasons above given, we feel that the language used means and was intended to mean to dispose of all decedent's property, real as well as personal and mixed.

The presence of the additional clause relating to insurance and lodge money indicates that testator sensed that they would not follow the ordinary provisions of the will. In our opinion, it has no significance for our problem, excepting to fortify the position that decedent wanted his widow to enjoy his entire estate.