## DUNN v. SPAHR.

Court of Appeals of Kentucky.

Oct. 16, 1953.

Charles E. Dunn, Covington, for appellant.

James C. Ware, Covington, for appellee.

CAMMACK, Justice.

This declaratory judgment proceeding was instituted to test the validity of a deed executed by Helen Spahr to Charles E. Dunn. In order to ascertain whether Helen Spahr had good title to the property, it is necessary that we look to the will of her mother, Bertha Spahr. The will follows:

"Newport, Ky.
July 7, 1947

It is my desire at my death, to pay $100 due my son Shirley, and $100 due my daughter Florence for painting the house, and my daughter Helen $200.00 due her. Helen Lu my grand daughter $10.00. The rest of the money is to be given my husband, Lewis Spahr. I wish to be buried next to my father, and a place be prepared where our children are buried for Lew. Helen is to be buried, on the space on the corner of the lot on the side of her great grandmother.

/s/ Bertha Spahr."

Bertha Spahr died in May, 1948, and her will was duly probated. At the time of her death Bertha Spahr's estate consisted of a small bank account amounting to $38.13, two insurance policies amounting to $309.77, in addition to real estate which was encumbered to the extent of $1,141.56. Helen Spahr testified that she advanced $1,014.60 to pay the debts, including funeral expenses, and the specific legacies in the will. There was little difference in Bertha Spahr's estate at the time she made her will and at the time of her death. After Bertha Spahr's death, Lewis Spahr, the residuary beneficiary under the will, conveyed the real estate to himself and Helen Spahr with survivorship. Lewis Spahr died in July, 1948. Helen Spahr executed the deed in question in August, 1952.

The question at hand is, Can the statement "The rest of the money is to be given my husband" be construed as meaning "the rest of my estate is to be given my husband?" We think this interpretation does no violence to Bertha Spahr's will when its provisions are considered in the light of the facts and circumstances heretofore related. The cash and insurance were insufficient to meet the debts and funeral expenses, and the real estate was encumbered to the extent of some $1,100. Obviously, it would have been necessary to sell the real estate to settle Bertha Spahr's estate had not

Lewis Spahr, the residuary legatee, and Helen Spahr, who had advanced the money to liquidate the estate, entered into the survivorship agreement. It is equally clear that Bertha Spahr intended to dispose of all of her estate. In the case of Mutual Life Insurance Company of New York v. Spohn, 172 Ky. 90, 188 S.W. 1078, it was pointed out that the word "money" is often used in wills in a very broad and elastic sense, and that when it is considered in the light of proper evidence is frequently given meaning to conform to the testamentary intent. See also, In re Ingham's Estate, 315 Pa. 293, 172 A. 662, 93 A.L.R. 510; Page on Wills section 974. Any other interpretation would clearly defeat Bertha Spahr's intent.

Judgment affirmed.