## Krogman Estate

*Strong, Barnett & Grasberger*, for exceptants.
*Stradley, Ronon, Stevens & Young*, contra.

## ADJUDICATION

KLEIN, P. J., June 9, 1966.—Martha B. Krogman died on March 9, 1964, unmarried and without issue, leaving a will which was admitted to probate on May 20, 1965, when letters testamentary were granted. Proof of advertisement of notice thereof was produced to the auditing judge.

The following "Copy Fair" of testatrix's will was admitted to probate by agreement of the parties:

### "COPY FAIR

"My Last Will and Testament

"To be buried from Oliver Bair's Funeral Parlor, 1821 Chestnut Street, Mae to take care of it with money that is in bank same as Harry's with a pale blue soft dress. The money that is left to go to Mae. $1000. for George.

"Bonds—some have names on to be given to said people. What is left to go to Robert Borden, Roberta Peterson, Jack James, Grace Krogman, Frances Russell, George Krogman, Jr., Dorothy and George James.

"Sharp & Dohme Stock to go to Dave and also Social Security money.

"My silver to go to Baby Roberta Peterson as she is the youngest little girl.

"All my personal belonging to Francis and Happy for they are my size that is of clothing, etc. and what they don't want give to the Sunday Breakfast Assn.

"My pension money goes to Robert Borden as on policy.

"Mutual Aid money from Company goes to Bobbie Peterson.

"Money that will come from Company goes to Happy along with one of the bonds at $500. one which pays interest twice a year.

"Rings and pins, watch, Dorothy James.

"(Signed) Martha B. Krogman"

The will contained no express, readily identifiable residuary clause. A study of the inventory and account, however, reveals that testatrix specifically disposed of all of her assets with the exception of $309 in currency found in her safe deposit box.

The administrators c.t.a. take the position that all of the legacies are subject to payment of their proportionate shares of the expenses of administration and transfer inheritance taxes, and their account, including a so-called "Proposed Distribution" account, has been prepared on that basis.

Mr. Grasberger appeared in behalf of George Krogman, who receives a legacy of $1,000, and objected to the allocation of any part of the expenses or taxes to his legacy. He contends that the direction, found in the first paragraph of the will, that "The money that is left to go to Mae" constitutes a residuary clause from which all administration expenses and taxes must be paid and that the pecuniary legatees are entitled to receive their gifts in full, free from diminution.

The inartistic writing before us for interpretation is completely silent with respect to the manner in which administration expenses and transfer inheritance taxes are to be paid.

Generally, the costs of administration must be borne by the residuary legatee. See Hunter O. C. Commonplace Book (2d ed.) vol. 4, page 29, and the cases there cited; see, also, Partridge-Remick, Pa. O. C. Practice, vol. 6, §44.07. Prior to the passage of the Inheritance and Estate Tax Act of June 15, 1961,

P. L. 373, inheritance taxes were payable by the legatee, or out of property passing to him, if the will did not clearly indicate otherwise: Brown's Estate, 208 Pa. 161 (1904); Penn-Gaskell's Estate (No. 1), 208 Pa. 342 (1904); Rettew's Estate, 142 Pa. Superior Ct. 335 (1940). The existing law was changed by the statute, which provides in section 718:

"*Source of Payment.*—

"(a) Outright Devises and Bequests. In the absence of a contrary intent appearing in the will, the inheritance tax imposed by this act on the transfer of property passing by will absolutely and in fee, shall be paid out of property forming a part of the residuary estate . . .

"(c) Other Transfers. Except as provided in subsections (a) and (b) of this section, the ultimate liability for inheritance tax imposed by this act shall be upon each transferee".

It is clear that under the provisions of the tax statute, if there is no residue, section 718(c) becomes applicable, and the individuals receiving the legacy are obligated to pay the taxes thereon, just as would have occurred under the prior law: Grossman and Smith, Pennsylvania Inheritance and Estate Tax, page 409.

Accordingly, if there is a residuary estate, it must bear the burden of administration expenses and inheritance taxes unless the will provides otherwise. If there is no residue, each legatee must bear his share of these items.

Does the language in question constitute a residuary estate, as legatee George Krogman contends? In our opinion, it does not.

It is well settled that the ascertainment of testator's actual intent is the primary object of all testamentary construction. This intent must be gathered from a consideration of all the language contained in the four

corners of the will, the scheme of distribution and the circumstances existing when the will was made: Burleigh Estate, 405 Pa. 373 (1961). See Lander Estate, 416 Pa. 605 (1965); Peden Estate, 409 Pa. 194, 202 (1962).

The word "money" can have various meanings when used in a testamentary writing. In Turner Estate, 408 Pa. 530, 543 (1962), the Supreme Court said:

"In Smith v. Davis, 1 Grant 158, Mr. Justice Woodward, speaking for this Court, said: 'On such a question, adjudged cases are of no value farther than to show, what the authorities abundantly prove, that the word *money* in a will, may be construed to mean cash, or may stand for the whole personal estate, as the intention of the testator, deduced from every part of the will, may seem to require. It is to be received in its restricted and proper sense, or in its more enlarged signification, as it will best effectuate the general intention of the testator; and because wills differ more than men's faces, it can rarely happen that the construction given to this word in one will, shall help us any in interpreting its meaning in another.' (pages 158-9) 'Money' has received in our decisions various constructions. . . ." (Italics in original.)

It is, therefore, apparent that precedents are of little value in determining the meaning of the word "money" in any given will. Each case depends upon the use of the word in the general context of the instrument. Ordinarily, however, it is used to designate cash, not property generally. In Ingham's Estate, 315 Pa. 293 (1934), Mr. Justice Drew said, at page 295:

"It is sufficient to point out that under our cases the word 'money', when used in a will, is to be construed in the broad sense of wealth or property, instead of in its narrow sense as cash, only where the context of the will and the circumstances surrounding its execution require that it be so interpreted in order to give

effect to the testator's intention: Jacob's Estate, 140 Pa. 268; Levy's Estate, 161 Pa. 189; Dodson's Estate, 253 Pa. 344; Ostrom v. Datz, 274 Pa. 375; Talbot v. Anderson, 292 Pa. 454; Williamson's Estate, 302 Pa. 462; see Arnold's Estate, 240 Pa. 261".

This rule was reaffirmed in Turner Estate, 408 Pa. 530 (1962) and Conlin Estate, 388 Pa. 483, 489 (1957).

Let us examine this holographic, highly inartificial will with these rules in mind. First and foremost, we must note that decedent made a complete distribution of her estate with the exception of a small amount of cash. She left no assets which would be distributable under a general residuary clause. See section 751 of the Fiduciaries Act of April 18, 1949, P. L. 512.

An examination of the will from its four corners leaves no doubt as to testatrix's meaning. The will is divided into nine unnumbered paragraphs. The first paragraph, in which the disputed language is found, provides:

"To be buried from Oliver Bair's Funeral Parlor, 1821 Chestnut Street, Mae to take care of it *with money that is in bank* same as Harry's with a pale blue soft dress. *The money that is left* to go to Mae. $1000. for George". (Emphasis supplied).

The phrase "The money that is left" immediately follows a sentence which specifically refers to "money that is in bank". The position of the two terms in the same paragraph indicates that when decedent referred to "money that is left", she was referring specifically to the "money that is in the bank" and not to any of her other assets. Testatrix used a similar arrangement of phrases in the next paragraph of her will in disposing of her bonds, in which she said: "Bonds—some have names on to be given to said people. What is left to go to . . ." eight persons designated by name. It seems evident that in the first paragraph she was restricting

"The money that is left" solely to the money in the bank, and in the following paragraph she was restricting "what is left" solely to a disposition of the bonds. It is apparent that she did not intend, in either paragraph, to dispose of anything but the property designated in that particular paragraph, and that she did not intend either of them to serve as a residuary clause.

A number of cases have been cited by counsel in which the word "money" was construed broadly to include other property owned by testator. When this was done, it was usually to avoid an intestacy or because it was necessary to do so in order to give effect to testator's intentions.

In Ingham's Estate, supra, the court said, at page 296:

". . . It is a well settled rule of construction that a will is not to be interpreted so as to produce an intestacy as to any part of the testator's estate, if it may reasonably be construed so as to avoid such a result: Reimer's Estate, 159 Pa. 212; Woodside's Estate, 188 Pa. 45; Fuller's Estate, 225 Pa. 626; Worst v. DeHaven, 262 Pa. 39; Ostrom v. Datz, supra; Biles v. Biles, 281 Pa. 565; Buechley's Estate, 283 Pa. 107 . . ."

See also: Conlin Estate, 388 Pa. 483 (1957); Beisgen Estate, 387 Pa. 435 (1956).

In the present case, neither of these reasons exist. Testatrix disposed of all of her assets, thereby effectively preventing the occurrence of an intestacy. It is also clear that she was limiting her gift to Mae of "the money that is left" to the money that was in the bank.

We conclude, therefore, that under the circumstances of this case, George Krogman's legacy of $1,000, as well as all of the other legacies, must bear its proportionate share of administration expenses and transfer inheritance taxes, in the manner indicated in the so-called "Proposed Distribution" account included in the account, which will accordingly be confirmed as

stated, and the awards will be made in accordance therewith, and in accordance with the prayer of the statement of proposed distribution, as the same may be reflected in the schedule of distribution which will be directed to be filed . . .

And now, June 9, 1966, the account is confirmed nisi.

OPINION SUR EXCEPTIONS TO ADJUDICATION

BOLGER, J., October 28, 1966.—The exceptions involve the construction of the phrase, "the money that is left". The inartistic, holographic will disposed of bank accounts and bonds severally to 15 different collateral beneficiaries, leaving undisposed of $376 found in a safe deposit box. The will contained no express residuary clause. The lone exceptant, George Krogman, a brother, who receives a $1,000 legacy, seeks to augment the gift of more than $20,000 of testatrix's $30,000 estate to "Mae", a sister, identified as Mary P. Ridgway, by adding the $376 undisposed of to "Mae". The latter refuses to take it. She is apparently wary of her brother's action, being that of a Greek bearing gifts. Exceptant maintains that the gift to "Mae" in the first dispositive clause of the will is, in effect, a residuary clause which should bear the burden of all administration expenses and collateral inheritance taxes exceeding $4,000, including the $150 indirect tax on exceptant's legacy. It is clear why "Mae" refuses to accept the proffered $376 extra! The adjudication held that the disputed phrase was not a residuary clause and that the legatees must share the burden of the administration expenses and the collateral inheritance tax levied on their respective interests.

The register of wills, at the request of the parties, probated a "copy fair" of testatrix' will. In doing so, he added the sentence in dispute to the preceding paragraph, whereas in the original will it appears as a separate paragraph. The auditing judge, apparently with-

out objection, accepted the "copy fair" and based his decision upon it. Exceptant assigns this as error and insists that when the disputed sentence is separated from the preceding paragraph, his conclusion is that the separated sentence or paragraph constitutes a residuary clause. He maintains properly that Rockett Will, 348 Pa. 445 (1944), the leading case on "copy fair", as applied here, should not affect the construction of the will, the cited case dealing strictly with matters of probate as distinguished from distribution. However, his conclusion that such separation of the paragraphs supports his position does not necessarily follow.

The adjudication cites and relies upon an almost complete list of the many authorities construing the word "money" and concludes that in the present context, it cannot be construed as a gift of residue, including the $376. We are of the unanimous opinion that this conclusion is correct. We have reviewed the adjudication and the will and are of like opinion that whether the phrase in dispute be a part of the preceding paragraph or separated from it, it does not constitute a residuary clause. The reasons based upon the authorities cited by the learned auditing judge point this out very clearly. Punctuation plays little part in the construction of a will: Tarter's Estate, 291 Pa. 458 (1928); Springman Estate, 37 D. & C. 2d 691 (O. C. Phila., 1965). Where a layman writes his own will, the writing should be construed as a whole, without resort, if possible, to fixed technical meanings: Smith's Petition, 291 Pa. 129 (1927).

There are two additional observations which merit attention. The first is that although a residuary clause may appear in any part of a will: Klein's Estate, 9 D. & C. 20 (O. C. Philadelphia 1927), we hold that the fact that this testatrix placed the disputed clause at the beginning of her will is one indication that she

did not consider it residuary in nature. The second point is that in addition to bestowing upon her sister, "Mae", more than one half of her estate, she also entrusted her with the responsibility of the burial arrangements of her remains. To us, this indicates that "Mae" was a favorite of testatrix' bounty, whom she did not intend to be saddled with the deductions involved.

The exceptions are dismissed, and the adjudication is confirmed absolutely.