## Young Estate

*John J. Schneider,* for exceptants.
*Karl Wagner,* contra.

MARSH, J., October 12, 1972.—This matter is before the court on exceptions filed to the auditor's report in the Estate of John Young, deceased. John Young died November 17, 1969, leaving a last will and testament and codicil, which are as follows:

"June 16/69

"My last will and Testament. I leave all my private and personal belongings too my stepdaughter Evelyn Smith which she has, been kind to me—also Edward Smith her husband—This, is, the way her Mother requested before she passed away, also my wife Almeda Young I know she has, promised me she will take care of my son Ralph G. Young as long as need be—

"Signed John Young—owner

"P.S.—May God bless you (all)

"Witness: Marlin W. L. Boop

"Witness: Mrs. Clara M. Boop"

"CODICIL

"To my will dated June 16, 1969
I appoint Marlin W. L. Boop of 508 Pennsylvania Avenue, Matamoras, Pennsylvania as Executor of my will dated June 16, 1969 to serve without bond.

"In all other respects I ratify the provisions of my will dated June 16, 1969.

"John Young"

The will was holographic and the codicil was typed on the bottom of the holographic will. The will and codicil were duly probated and Marlin W. L. Boop was appointed executor of the estate. The first and final account showed the sum of $13,850 in the hands of the executor for distribution. A statement of proposed distribution was filed, wherein the entire estate was awarded to Evelyn Smith, purportedly pursuant to the terms of the last will and testament and codicil of John Young, deceased.

A stipulation between the attorney for the accountant and the attorney for the claimant was filed on November 23, 1970, for reference of the estate to an auditor. On December 4, 1970, the court appointed Sidney L. Krawitz, Esq., as auditor to take testimony and report to the court as to the validity of the claim of Ralph Young excepted against the estate.

On May 26, 1972, the auditor filed his report and determined that the estate should be distributed to Evelyn Smith, stepdaughter of decedent. On June 15, 1972, exceptions to the auditor's report were filed. There are no allegations that the procedure was in any way improper. The exceptions narrow themselves basically to two questions: (1) Are the words, "all my private and personal belongings" ambiguous? and (2) if ambiguous, what evidence may be admissible to explain the ambiguity?

The perplexing problem that the court is always faced with is to give the same meaning to the words of a will that testator attached to them. The caution to the court is always to avoid rewriting testator's

will. The question in expounding a will is not what testator meant, but what is the meaning of his words: Sherman Estate, 56 Schuyl. 101 (1960). In the Sherman case, the court was faced with the words, ". . . my bedroom suit and all my furniture, carpets and personal belongings contained in my bedroom in her home . . ." and whether these words included $150 in cash contained in the bedroom. The court held that it did.

Citing Estate of Lippincott, 173 Pa. 368, and Beisgen Estate, 387 Pa. 425, wherein the words "personal effects" and "household effects" were used, they distinguished that the word "effects" pertained to the personal use or the household use as they had been respectively used. The word "belongings" is construed to mean all personal property when used in conjunction with the limitation of personal belongings in "my bedroom." Obviously, in Sherman Estate, the limitation on the personal belongings would limit it to not include real estate in that real estate could not be contained in the bedroom. Further limitations have been that the words "personal estate" could not be enlarged to include real estate: Bruckman's Estate, 195 Pa. 363.

On the other hand, in Swentzell's Estate, 294 Pa. 261, the court held that a gift of the "residue of my personal estate" included real estate where the personal estate was small and the testator had given pecuniary legacies of large amounts, leaving nothing in the residuary.

In Lafferty's Estate, 311 Pa. 469, the court went so far as to include real estate as being carried by the words, "effects" when that was the manifest intention of testator by reading the entire will.

In the layman's will written by a layman, the will

should be construed precisely as the testator would have understood it: Estate of Lippincott, 173 Pa. 368 (1896).

In Miller v. Boyd et al., 8 D. & C. 52, in an action of ejectment, the court was called upon to construe a will where the language of the residuary clause was, ". . . can do as they like with my other belongings." The court in that case recited the presumptions that testator intends to dispose of the entire estate and that a construction of doubtful clauses in a will should be interpreted, if possible, to avoid a partial intestacy, unless it clearly appears that testator intended to die intestate as to a part of the property. They further recited the maxim that an heir-at-law is not to be disinherited except by express words or by necesssary implication. The court cited Jacobs' Estate, 140 Pa. 268, wherein the court construed the words "The remainder and residue of my money . . ." to carry the entire real estate, when it was shown by parol evidence that at the time of the making of the will testatrix did not have real estate, but used the personal property for the purchase of real estate prior to her death. In that case, parol evidence was admitted for the purpose of identifying the gift, but not for the purpose of writing or creating the will.

In McGlathery's Estate, 311 Pa. 351 (1933), the words ". . . all my personal property including jewelry, clothing, etc., and in addition thereto, I bequeath unto . . .", the court held that the words were ejusdem generis and would include the household furniture. The court, in that case, presupposed the broad concept of the term "personal property" and stated that the ejusdem generis theory was restrictive of the broader term "personal property."

In Beisgen Estate, 387 Pa. 425, the court, after re-

viewing the various interpretations of words used in other wills, quoted Rouse Estate, 369 Pa. 568, as follows:

" 'First considering whether there was an intentional [or accidental] omission, resulting in intestacy, there is a presumption testator intends to dispose of his whole estate. Such presumption, however, is met by an equally potent presumption that an heir is not to be disinherited *except by plain words or necessary implication.* The effect of the conflict of rules is well stated by Judge Hunter in his Pennsylvania Orphans' Court Commonplace Book, Vol. 2, Wills, sec. 4(b), p. 1436, in the following language: "These presumptions are of like force and effect, and in applying one we must not overlook the other. *Neither presumption, however, can be permitted to defeat the intention of the testator which is expressed in apt words or appears by clear implication.*" See Grothe's Estate, 229 Pa. 186, 78 A. 88; French's Estate, 292 Pa. 37, 140 A. 549; Loving Estate, 159 Pa. Superior Ct. 339, 48 A.2d 39 . . .

" '. . . If there were an omission, such omission might not be remedied by judicial construction. In Grothe's Estate, supra, Justice Mestrezat said, page 192: ". . . if it was an oversight, the courts have no authority to insert a provision . . . *If he sees fit for any reason not to dispose of any part of his estate, or such is the result of ignorance or oversight, the courts cannot supply the gap or hiatus and reconstruct the will.* To do so would be a perversion of the functions of the court, and deprive a testator of the right to dispose of his property." See: Morrison Will, 361 Pa. 419, 65 A.2d 384, and cases therein cited.' "

Beisgen Estate went on to say:

"Furthermore, the presumption against an intes-

tacy, even where there is no countervailing presumption, cannot be used to ignore or distort or alter testator's language in order to avoid an intestacy. It merely means that if the testator's language is reasonably susceptible of two constructions, one of which will produce and the other avoid an intestacy, the latter interpretation or construction will be adopted unless it defeats the testator's intention: Ingham's Estate, 315 Pa. 293, 172 A. 662."

In the instant case, we must remember that the will was holographic, that testator, in fact, mentioned the son, Ralph G. Young, and that the estate consisted of $986 personal property and real property of $13,500. In addition to the above, there was a joint account with right of survivorship of $1,592. The credits for the estate were $5,073.81.

We, therefore, hold as a matter of law, that the words, "private and personal belongings" as used in the last will and testament of John Young, deceased, covered the entire estate of John Young, deceased, and were used in the sense as conveying all his private property, as opposed to public property. Having reached this conclusion, it becomes unnecessary to dispose of the second question as to whether or not parol evidence would be admissible to show what the meaning of the words used meant. We, therefore, enter the following

## ORDER

And now, October 12, 1972, the exceptions filed to the auditor's report by Ralph G. Young in the matter of the Estate of John Young, deceased, are dismissed. Costs are to be placed on exceptant.