## Hughes's Estate (No. 2).

Argued April 18, 1935. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*George G. Patterson,* for appellant.

*J. Austin Sullivan* and *Mitchell MacCartney,* for appellees.

OPINION BY MR. JUSTICE SCHAFFER, June 29, 1935:

In her will Amelia H. Hughes gave legacies of $1,000 each to her brothers, William Hahman and Harry Hahman. At her death they were indebted to her on a promissory note for $2,000. Subsequent to the probate of her will a paper, apparently partly in her handwriting and partly in the handwriting of her executor, was probated as a codicil. Because of her illness she could not converse. This paper, characterized by the court below as a written conversation between the testatrix and her executor, contained instructions about the management and settlement of her estate. It is most informal in nature and is somewhat difficult to describe without setting forth the photostatic copy. The particular parts of the paper with which we are concerned read: "I have several loans out and I want to tell you what they are and ask your advice. I first thought Will and H. should repay the loan of 2000 out of the legacy of 1000 each but I really don't like to insist on that. No! Collect. Let it go—only ask Will to pay for coal. Fred seems left out & I like him immensely & feel he should be shown some preference, if any is to be shown. Will and Harry have received lifts right along and Fred never asks for a thing.

"I think you might as well call these loans gifts. Will owes for two cars of coal which he cabbaged & I think he should pay for them even if he must use part of the proceeds for his legacy from you to do so.

"It is within reason to ask Will to settle all matters between himself & the estate.

"Please carry these ideas out as a part of my will. Yes."

The words "No! Collect" do not run along with the other writing. They are written at an angle and at the left-hand margin of the paper above the words "Let it go."

The question to be decided is whether the note can be set off against the legacies and this involves the interpretations of the paper probated as a codicil. The audi-

tor allowed the set-off. The court decided otherwise, that the legacies were payable to the legatees and the note for $2,000 should be cancelled. From this ruling the executor and trustee appeals.

The nub of the controversy is the meaning and effect of the two words "No! Collect."

The executor testified that the method of communication between him and his mother, whose condition was serious and who was deaf, was of her choice, that part of the writing was hers and part his and that he wrote the words "No! Collect" at her instance after the words "Let it go—only ask Will to pay for coal." These last words are in her handwriting.

The auditor entered into quite a full discussion of the rule as to the admissibility of testimony in will cases where a latent ambiguity exists and where there is a patent ambiguity, in the former instance parol evidence being admitted and in the latter being excluded. He held that the testimony of the executor was admissible to explain the meaning of the words "No! Collect" in his handwriting. We think whichever rule applies, the whole situation is too doubtful to permit these two interpolated words to overcome the clearly expressed wish of the testatrix, where she says in her own handwriting, "I first thought Will and H. should repay the loan of 2000 out of the legacy of 1000 each but I really don't like to insist on that. Let it go—only ask Will to pay for coal. . . . I think you might as well call these loans gifts." The words "No! Collect" precede the language beginning, "Let it go," and, as before stated, are written diagonally on the paper. On the photostatic copy they are seven lines above the sentence, "I think you might as well call these loans gifts."

The court below in its opinion says that an examination of the original codicil discloses that the words "No! Collect" were written by a different hand and with a different pencil from the other part of the codicil referring to the legacies and the notes, that Charles Robert

Hughes testified that these words were written by him at the suggestion of testatrix, before she signed the codicil, that some of the writing in the codicil is his, but that in several instances his memory was faulty in recalling what particular words he wrote and what testatrix wrote. The court concluded that the words "No! Collect" as written were not intended to revoke and set aside the clearly expressed bequest of $1,000 each in the original will and that the codicil should be given effect uninfluenced by these words, as their meaning is too indefinite and uncertain. The court called attention to the fact that there is an exclamation mark after "No" and that it may be considered a memorandum indicating that the coal account was to be collected, as immediately following the word "Collect" are the words, "Let it go— only ask Will to pay for coal." The court was of opinion that the testimony of the executor should not have been admitted; that the words "No! Collect" as written are meaningless and have no effect upon the clearly expressed direction of the testatrix, that without these words the codicil is not ambiguous, and that as they are not in her handwriting, they should not be given effect.

After a careful consideration of the situation, we are of the opinion that the court's view was correct. The judge had the original codicil before him and from an inspection of it concluded that the executor was mistaken in saying that the words, "Let it go—only ask Will to pay for coal" and the words, "I think you might as well call these loans gifts," were in his handwriting. The language itself would indicate that the executor was mistaken in saying so. Furthermore, he did not say the words "No! Collect" were the last words written in the codicil regarding the note.

Just what are patent and what are latent ambiguities in a will is sometimes very difficult to determine. As long ago as Trustees v. Sturgeon, 9 Pa. 321, 327, we said: "There are two kinds of ambiguities; the one patent, the other latent. The first is, when the uncertainty exists

on the face of the will; and, in such case, parol evidence to explain it has never been admitted, because it could only be explained by putting other words or ideas into the will or in the mouth of the testator, and thus make a new will for him. The other is ambiguitas latens, where the words of the will are plain, consistent, and certain, and where the uncertainty arises from extrinsic facts or circumstances, either in relation to the property devised or the person who is entitled to take. In such cases of ambiguity, parol evidence is admitted in explanation of and to designate the property or person designed by the testator."

Whether patent or latent, we are of opinion that these interpolated words, meaningless in themselves, and having no apparent connection with the context of the codicil, ought not to control it.

The decree of the court below is affirmed.