Beisgen Estate.

Argued October 5, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Harry Alan Sherman,* for appellant.

*William J. Krzton,* with him *John W. Cost,* for appellee.

OPINION BY MR. JUSTICE BELL, December 29, 1956:

The questions involved are these: Do the words "personal effects including clothing and household goods" include testatrix's bank balance and stock and is oral testimony admissible to prove the meaning and intent of that language?

Flora Irene Beisgen, a widow, died December 3, 1954. Her will, dated March 5, 1954, which was prepared by her attorney pursuant to her oral and written directions, provided in material parts as follows:

"Second. I give, devise and bequeath unto my daughter, Alice Irene Danko, *all my personal effects,** including clothing and household goods."

Testatrix then directed her executrix to sell her real estate and divide the proceeds of sale equally between her daughter, Alice, and Alice's daughter, Wilma, and testatrix's other grandchild, Andrew Edward Finegan, who was the son of a deceased daughter of testatrix. These were testatrix's only surviving next of kin. There was, unfortunately and unwisely, no residuary clause in the Will.

Testatrix left a bank account of $8110.; stock worth $6.50; some clothing and some jewelry of little value; eight rooms of furniture; and real estate which was sold for approximately $6000.

If cash and stock are included in "personal effects", testatrix's daughter Alice will receive cash and stock of $8116., all the clothing and household goods, and one-third of the proceeds of sale of the real estate; tes-

---

* Italics throughout, ours.

tatrix's granddaughter Wilma (daughter of Alice) and testatrix's grandson Andrew will each receive one-third of the proceeds of sale of the real estate. If the words "personal effects", considered in conjunction with "including clothing and household goods", do not include the bank balance and stock, an intestacy as to the cash and stock results, and testatrix's daughter Alice and grandson Andrew will each receive one-half of the bank balance and of the stock. Wilma and Andrew are minors for whom a guardian was appointed.

At the audit of the account, Mr. Louis W. Woodall and John W. Cost, Esq., who drew the Will, *both of whom were present* when testatrix discussed how she wished to leave her estate, testified against the claim of testatrix's daughter Alice. Woodall testified that after Mrs. Beisgen mentioned her money in the bank "She said she would leave that out: the expenses of her hospital and all her sickness would take that. She said that's the reason she did not put it in the will."

Mr. Cost testified that after testatrix told him how she wanted her estate left he asked her to put her directions in writing.

"A. Yes; Mrs. Beisgen asked me to prepare a will for her in which her principal interest was the disposition of a piece of real estate that she owned, and she told me that she would write and tell me how she wanted that divided. Well I asked her if there was anything else in her estate. She told me yes, that she had some money or stocks, and I asked her what she wanted done with that, and she said, 'I am not going to do anything in the will with it, because I am going to use it all in hospital and doctor bills'; and that was the principal discussion of what we had at the office; and then, following that, she sent me this exhibit, and I prepared what I thought she wanted." The dangers inherent in

admitting such parol evidence to prove testatrix's intention with respect to her money and stocks is strikingly manifested by the evidence in this case. The exhibit, viz., a letter dated February 5, 1954, and signed by Mrs. Beisgen was contrary to several provisions of her Will and particularly to her oral directions to Cost about her money. Her letter stated: "I want my daughter Alice Irene Danko to have all my personal belongs & household goods. . . . After all my expences or paid after my death. And there is any money in cash I want it divided equal among, Alice, Wilma, Andrew."

All of the foregoing testimony was objected to by the guardian, first on the ground that the testimony of Cost was inadmissible because it was a privileged communication between counsel and client, and secondly, because all of the aforesaid testimony of Woodall and Cost was inadmissible because it would violate the Wills Act and allow a written Will to be made or altered by parol evidence. If the aforesaid parol evidence was admissible, it would *clearly* establish that the testatrix did *not* intend to include her bank account or stock in and by the words "personal effects".

The Court said in *Burr Estate,* 381 Pa. 547, 550, 113 A. 2d 712: "A communication between attorney and client made in the presence of a third person is not privileged: Cridge's Estate, 289 Pa. 331, 336." Appellant's contention that Cost's testimony was inadmissible because it was a privileged communication between himself and his client is without merit. A very much closer question is presented as to whether parol evidence is admissible to determine testatrix's understanding of and her intent with respect to "personal effects".

In *Battles Estate,* 379 Pa. 140, 108 A. 2d 688, the testatrix gave and devised her home "for elderly people as a memorial to my grandparents above named",

and authorized her executors and trustees "to make arrangements with the Presbyterian Home & Hospital of Erie, or some other suitable corporation or group of individuals, for the conduct and maintenance of a dignified and proper home for elderly people . . .". The Court held that The Presbyterian Home in the Presbytery of Erie was qualified to receive this devise. Justice STEARNE, speaking for the Court, said: "Appellant . . . sought to introduce oral testimony to establish the testatrix's *true intention concerning the meaning of the language* employed in the item of the will now in question, in relation to the above conditions and restrictions. The learned hearing judge correctly excluded this testimony. We agree that the judge was required to interpret the words as written in the will: 'a dignified and proper home for elderly people as a memorial to [testatrix's] grandparents.' Doubtlessly Miss Read sincerely believes that the oral testimony of testatrix's conversations indicating her wishes made to appellant, to officers of the Home, *and to attorneys,* should have been admitted as proof of testatrix's testamentary intent. Such contention is apparently without personal benefit to her. . . . Unfortunately for appellant's contention, however, she is met with an insurmountable principle of law which prohibits the admission of such testimony. In a host of cases this Court has consistently decided that in construing a will, *it is not what testator may have meant but the meaning of the language used*: Rosengarten Estate, 349 Pa. 32, 36 A. 2d 310; Britt Estate, 369 Pa. 450, 87 A. 2d 243; Wharton Appeal, 373 Pa. 360, 96 A. 2d 104, and the many cases therein cited. Evidence of a testator's instructions to the scrivener which alters or adds to the terms of the will is inadmissible: Penrose's Estate, 317 Pa. 444, 176 A. 738. And *the scrivener's*

*testimony*, had it been offered, *as to his understanding of what the testator intended* would also have been inadmissible: Willard's Estate, 68 Pa. 327; Dembinski's Estate,* 316 Pa. 61, 173 A. 314. . . . In construing such a will a judge may figuratively place himself in testator's armchair and consider the circumstances by which testator was surrounded: Lerch's Estate, 309 Pa. 23, 159 A. 868; Prime's Petition, 335 Pa. 218, 6 A. 2d 530; Clark Estate, 359 Pa. 411, 59 A. 2d 109; Fahey Estate, 360 Pa. 497, 61 A. 2d 880; Shober Estate, 364 Pa. 321, 72 A. 2d 113. The intention of testator, however, must be determined from what appears upon the face of the will. Extrinsic evidence of surrounding facts must only relate to the meaning of ambiguous words of the will. It cannot be received as evidence of testator's intention independent of the written words employed: Reinheimer's Estate, 265 Pa. 185, 108 A. 412."

Where a latent ambiguity exists we have repeatedly held that parol evidence is admissible to explain or clarify the ambiguity, irrespective of whether the latent ambiguity is created by the language of the Will or by extrinsic or collateral circumstances: *Logan v. Wiley,* 357 Pa. 547, 55 A. 2d 366; *Gerety Estate,* 354 Pa. 14, 16, 46 A. 2d 250; *Metzger's Estate,* 222 Pa. 276, 71 A. 96. However, we consider that no such ambiguity exists in this case.**

---

* In *Dembinski's Estate* the Court said (page 64): "Appellants attempted to prove by the scrivener that the intention of the testator in giving the legacy was to pay the debts. Such testimony was inadmissible: Schoenberg's Est., supra; Cloud v. Clinkenbeard's Exrs., 48 Am. Dec. 397; Wallize v. Wallize, 55 Pa. 242; Willard's Est., 68 Pa. 327; Mizener's Est., 262 Pa. 62; Root's Est., 187 Pa. 118; Best v. Hammond, 55 Pa. 409."

** Just what are patent and what are latent ambiguities in a Will is sometimes very difficult to determine. Where a patent ambiguity exists on the face of the Will and the language is meaning-

The dangers inherent in admitting parol evidence to prove a testator's intention—namely, opening the door to fraud, changing or defeating the testator's intention, or nullifying the provisions of the Wills Act requiring Wills to be in writing and signed by testator at the end thereof—make clear the reason for the exclusion of such evidence. We hold that the testimony of Cost and Woodall was inadmissible for the purpose of proving testatrix's intentions or her understanding of the words "personal effects".

We must therefore consider the meaning of the language used by testatrix in the second paragraph of her Will without considering any oral testimony pertaining thereto.

In *Cannistra Estate,* 384 Pa. 605, 607, 121 A. 2d 157, the Court said: "No rule regarding wills is more settled than the great General Rule that the testator's intent, if it is not unlawful, must prevail! This is the reason why so many cases continually proclaim that the pole star in the construction of every will is the testator's intent. Moreover, 'The testator's intention must be ascertained from the language and scheme of his will: "it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words": Britt Estate, 369 Pa. [450, 454, 87 A. 2d 243]': Sowers Estate, 383 Pa. 566, 119 A. 2d 60."

We must therefore decide the intention of the testatrix by placing ourselves in her armchair and exam-

less or senseless or so uncertain as to be unintelligible as written, parol evidence to explain it is not admissible: *Hughes Estate (No. 2),* 319 Pa. 326, 329, 330, 179 A. 580; *Trustees v. Sturgeon,* 9 Pa. 321, 327; *Kelley v. Kelley,* 25 Pa. 460; Hunter's Pennsylvania Orphans' Court Commonplace Book, Vol. 2, Wills, Sec. 11 (d), page 1465.

ining her gift of "all my personal effects, including clothing and household goods". The words "effects" or "personal effects", in the early Pennsylvania cases which followed the English cases, were given a broad meaning—a meaning sufficiently broad to include all the testator's personal estate. This construction was adopted especially if a gift of personal effects (a) was not restricted by other language of the Will, or (b) if it was contained in a residuary clause: See *Reimer's Estate,* 159 Pa. 212, 28 A. 186, and cases therein cited. However, we believe the better view, by common usage and by recent decisions of this Court, is that "personal effects" prima facie mean *"articles associated with the person"* and do not include or mean "all personal property", or even "furniture". This is especially true when they are conjoined with limiting words ejusdem generis.

*Donaldson Estate,* 362 Pa. 357, 67 A. 2d 88 and *Estate of William Lippincott,* 173 Pa. 368, 34 A. 58, are so similar on their facts as to be analogous to and rule the instant case.

In *Donaldson Estate,* 362 Pa., supra, a testator gave his wife "all of my jewelry, wearing apparel, automobile or automobiles and other *personal effects* which I may own at the time of my decease". The Court held that the words "personal effects" did not even include household furniture, and said (pages 359-360) : "1. Appellants contend that the gift in paragraph 3 of 'all of my jewelry, wearing apparel, automobile or automobiles and other personal effects . . .' includes household furniture and furnishings, though not mentioned in the gift. That conclusion is reached by contending that the words 'and other personal effects' include, by the rule ejusdem generis, household furniture and furnishings. . . . Personal effects, on the one hand, and household furniture and furnishings on the other, may constitute

two classes of objects and have been so considered in our cases. In Lippincott's Estate, 173 Pa. 368, 371, 34 A. 58 (1896), it was said: 'The phrase "personal effects" has obtained, by frequent use, as distinctly a defined meaning as the phrase "household effects." *It designates articles associated with the person,* just as the opposite phrase denotes articles belonging to the house.' Household furniture may be and generally is personal property but *not all personal property is included in the more restricted term 'personal effects.'* The rule ejusdem generis, if applied to the words 'all of my jewelry (and) wearing apparel,' would certainly not include the furniture and furnishings in testator's residence; nor do the words 'automobile or automobiles' suggest it."

In *Estate of William Lippincott,* 173 Pa. supra, testator bequeathed "All my jewelry, wearing apparel and personal effects . . .". The legatee contended that the bequest included all the personal property in the house such as furniture, pictures, etc. The Court decided that the language meant and included only such effects as were connected with the person of the testator, and said (p. 369): "The general principle of interpretation that applies is that, when 'effects' is preceded by and connected with words of narrower import and the bequest is not residuary, it will be confined to species of property ejusdem generis with those previously described: 1 Roper on Legacies, star page 280. See also Rawlings v. Jennings, 13 Ves. 39; Planter's Bank v. Sharp, 6 Howard, 301; Ennis v. Smith, 14 Howard, 400."

*Arnold's Estate,* 240 Pa. 261, 87 A. 590, relied upon by appellant, is distinguishable—indeed it is almost unique. In that case testatrix left a holographic will in which she gave "my jewelry and other personal

*things"* to her two sisters. The Court admitted evidence to show that testatrix habitually referred to her property which was in the hands of the trust company as her "things", and decided that testatrix intended by those words to give to her two sisters all her property which was in the possession of the trust company. The Court aptly said (page 266) : "This evidence was not to show the intention of Anna H. Arnold, but to *fathom the exact meaning of the words she employed;* that is, it was not offered to prove directly what the testatrix meant, but *to show the precise meaning of her words,* so that her intention might be deduced therefrom."

Testatrix's daughter Alice further contends that "all my personal effects" should include all of testatrix's personal property because of the presumption against intestacy. Testatrix's grandchild, on the other hand, contends that the words should be limited and restricted, not only under the principle of ejusdem generis, but also because of the presumption against disinheriting an heir.

In *Rouse Estate,* 369 Pa. 568, 572, 573, 87 A. 2d 281, the Court said: "First considering whether there was an intentional [or accidental] omission, resulting in intestacy, there is a presumption testator intends to dispose of his whole estate. Such presumption, however, is met by an equally potent presumption that an heir is not to be disinherited *except by plain words or necessary implication.* The effect of the conflict of rules is well stated by Judge HUNTER in his Pennsylvania Orphans' Court Commonplace Book, Vol. 2, Wills, sec. 4 (b) p. 1436, in the following language: 'These presumptions are of like force and effect, and in applying one we must not overlook the other. *Neither presumption, however, can be permitted to defeat the intention of the testator which is expressed in apt words*

*or appears by clear implication.'* See Grothe's Estate, 229 Pa. 186, 78 A. 88; French's Estate, 292 Pa. 37, 140 A. 549; Loving Estate, 159 Pa. Superior Ct. 339, 48 A. 2d 39. . . .

". . . If there were an omission, such omission might not be remedied by judicial construction. In Grothe's Estate, supra, Justice MESTREZAT said, p. 192: '. . . if it was an oversight, the courts have no authority to insert a provision . . . *If he sees fit for any reason not to dispose of any part of his estate, or such is the result of ignorance or oversight, the courts cannot supply the gap or hiatus and reconstruct the will.* To do so would be a perversion of the functions of the court, and deprive a testator of the right to dispose of his property.' See: Morrison Will, 361 Pa. 419, 65 A. 2d 384, and cases therein cited." Furthermore, the presumption against an intestacy, even where there is no countervailing presumption, cannot be used to ignore or distort or alter testator's language in order to avoid an intestacy. It merely means that if the testator's language is reasonably susceptible of two constructions, one of which will produce and the other avoid an intestacy, the latter interpretation or construction will be adopted unless it defeats the testator's intention: *Ingham's Estate,* 315 Pa. 293, 296, 172 A. 662.

We hold that the gift to Alice of "all my personal effects including clothing and household goods" means articles associated with the person, including clothing and household goods, and does not include cash or stock.

Decree affirmed. Costs to be paid by appellant.