J-S08022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HAROLD SANKEY, EXECUTOR OF THE ESTATE OF MARY SANKEY RACEK A/K/A MARY S. RACEK, DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : | |
| | : | No. 1023 WDA 2019 |
| RICHARD S. SCOTT | : : | |

Appeal from the Order Entered June 28, 2019
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-13-013952

BEFORE: OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY McCAFFERY, J.: **FILED MARCH 04, 2020**

Harold Sankey (Appellant), as Executor of the Estate of Mary Sankey Racek a/k/a Mary S. Racek, deceased (Decedent), appeals from the order entered in the Allegheny County Court of Common Pleas, granting summary judgment in favor of Richard S. Scott (Appellee) in this legal malpractice action. Appellant asserts the trial court erred in granting summary judgment in favor of Appellee. For the reasons below, we affirm.

We glean the facts underlying Appellant's claim from the complaint and documents attached thereto. Appellant's mother, Decedent, married Thomas P. Racek on April 16, 1977.[1] Appellant's Complaint, 3/2/17, at ¶ 8. In May

_____

[1] It appears from the record that Racek is not the father of Appellant and his two siblings.

of 1998, Decedent executed a will and revocable living trust (Trust), both of which were drafted by Appellee, her attorney. *Id.* at ¶ 6. Under the terms of the will, Decedent left her entire estate to "[her] son, [Appellant], IN TRUST, to be added to and form a part of" the Trust she executed that same day. Appellant's Complaint at Exhibit B, Decedent's Last Will & Testament, 5/1/98, at 1. Appellant was named executor of her Estate. *Id.* at 2. The will made no provisions for Appellant's husband, Racek.

The Trust provided that, upon Decedent's death, the Trust estate would be divided equally among Decedent's three children—Appellant, John B. Sankey, and Carol S. Huff. Appellant's Complaint at Exhibit B, Decedent's Revocable Living Trust, 5/1/98, at 10. The Trust also, however, included the following provision with respect to Racek:

> If [Decedent's] husband, . . . RACEK, survives [Decedent], and if . . . said husband chooses to continue to reside in [Decedent's] residence at 142 Spring House Lane, the Trustee shall continue to hold in kind and IN TRUST such residence until he remarries or cohabits, or for one year after the death of [Decedent], whichever occurs sooner, provided, however, that . . . RACEK shall pay all utilities, maintenance and upkeep of the residence. The Trust shall pay all real estate taxes [and] satisfy [any] mortgage or encumbrance . . . . Nevertheless, if [Decedent's] husband asserts any claim against [Decedent's] estate and Trust, this entire Section [ ] shall be null and void.

*Id.* In June of 1999, Decedent and Racek conveyed the Spring House Lane property to the Trust. Appellant's Complaint at ¶ 12.

Decedent died on July 4, 2011. Appellant's Complaint at ¶ 13. On January 3, 2012, Racek filed a notice of election to take against Decedent's

will.  *Id.* at ¶ 15.  *See also* 20 Pa.C.S. § 2203 (surviving spouse has right to elective share of one-third of decedent's estate).  Thereafter, on April 21, 2015, the Orphans' Court entered a consent order directing the Estate to pay Racek $95,333.60, in satisfaction of his elective share.  Appellant's Complaint at ¶ 16.

On July 26, 2013, Appellant, in his capacity as Executor of Decedent's Estate, initiated this legal malpractice and breach of contact action against Appellee by writ of summons.  The action was later terminated, and then reinstated in 2016.  On March 2, 2017, Appellant, again solely in his capacity as Executor, filed a complaint seeking damages for negligence and breach of contract, and asserting Appellee acted negligently when he failed to properly advise Decedent how to prevent any of her assets from passing to Racek upon her death.  Indeed, Appellant insisted "Decedent and . . . Racek intended any and all of Decedent's real and personal property to pass to her children upon her death *via* the Trust."  Appellant's Complaint at ¶ 9.

After filing preliminary objections, which were overruled, Appellee filed an answer and new matter on December 7, 2017, followed by a motion for summary judgment on April 1, 2019.  In seeking summary judgment, Appellee argued:  (1) the Estate had no standing to bring the lawsuit because it did not suffer any actual monetary loss; (2) Appellant failed to produce evidence of any payment from the Estate to Racek; and (3) Appellant cannot demonstrate that Appellee failed to properly advise Decedent, and in doing so, frustrated

her purported intent.  Appellee's Motion for Summary Judgment, 4/1/19, at 11-23.

The trial court held a hearing on June 10, 2019, and, that same day, entered an order granting Appellee's motion for summary judgment "for the reasons set forth in the [summary judgment] Motion and [Appellee's] supporting Brief."  Order, 6/10/2019.  Appellant filed this timely appeal, and complied with the trial court's order directing him to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Before we address Appellant's substantive claim, we must first consider whether—as the trial court determined—Appellant waived all issues for review as a result of a defective, five-page Rule 1925(b) statement.[2]

Pursuant to Pennsylvania Rule of Appellate Procedure 1925, a trial court may order an appellant to file a concise statement of the errors complained of on appeal.  "The purpose of Rule 1925 is to narrow the focus of an appeal to those issues which the appellant wishes to raise on appeal."  *Mahonski v. Engel*, 145 A.3d 175, 180 (Pa. Super. 2016).  The Rule requires, in pertinent part:

> (i) The Statement shall set forth only those errors that the appellant intends to assert.
>
> (ii) The Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge.  . . .

_____

[2] Appellant raised this issue as the first claim in his brief.  Appellant's Brief at 4.

\*     \*     \*

(vi) If the appellant in a civil case cannot readily discern the basis for the judge's decision, the appellant shall preface the Statement with an explanation as to why the Statement has identified the errors in only general terms. In such a case, the generality of the Statement will not be grounds for finding waiver.

(vii) Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.

Pa.R.A.P. 1925(b)(4)(i)-(ii), (vi)-(vii).

This Court has explained:

[I]t is well-established that "[a] concise statement must properly specify the error to be addressed on appeal." "[T]he Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal." Further, this Court may find waiver where a concise statement is too vague. "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." "A Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all."

*In re A.B.*, 63 A.3d 345, 350 (Pa. Super. 2013) (citations omitted).

Here, the trial court found the Rule 1925(b) statement filed by Appellant was "entirely at odds with the requirements of Rule 1925." Trial Ct. Op., 9/16/19, at 2. The court noted the first paragraph of the statement identifies the document as a "Motion for Reconsideration." *Id.* Furthermore, the trial court found:

The document does not contain any paragraphs citing this Court's errors **or** . . . abuses of discretion. Not in the entirety of the Brief are the words "error" or "abuse of discretion" used. Nowhere in the document does Appellant identify any act of this Court that the Estate intends to raise before the Superior Court. [Appellant's attorney] has failed to preserve any issue for appeal.

- 5 -

*Id.*

Appellant contends, however, his Rule 1925(b) statement sufficiently alerted the trial court he was challenging the three bases upon which the court granted summary judgment in favor of Appellee. Appellant's Brief at 18-19. We agree. We recognize Appellant included unnecessary information in his concise statement, including a summary of the factual and procedural background of the case. Nevertheless, on the last two pages of the statement, Appellant asserted "there were genuine issues of material fact going into discovery and the motion for summary judgment." Appellant's Concise Statement of Errors Complained of on Appeal, 8/7/19, at 4 (unpaginated). Appellant then set out the three bases upon which the trial court granted summary judgment, and stated why he believed the court's ruling was erroneous:

> (a) Lack of standing: This was disposed of in the PO's, having been overruled in their entirety, and is now inappropriate as a basis for summary judgment due to the coordinate jurisdiction doctrine.
>
> (b) The allegation that [Appellant] failed to provide that proof the heirs and/or estate paid Racek the $95,333.60 when [Appellant] pled that this payment was made in a fact-pleading jurisdiction and showed that it was made.
>
> (c) That [Appellant] cannot show that Decedent's intent was contrary to the express language of the Trust and/or that anything [Appellee] could have done would have resulted in escaping Pennsylvania's elective share obligation, escaping which could have been accomplished through creation of an irrevocable trust, or inter vivos giving for example, which may not have eliminated the elective share but could have made it less burdensome to the estate and less opposite the intent of [Appellee's] client, the

Decedent, of whom the Estate is an extension of her legal existence, resulting in less harm to Decedent/[Appellant].

*Id.* at 4-5. Appellant concluded that "sufficient genuine issues of material fact existed to warrant denial of the motion for summary judgment[.]" *Id.* at 5.

While we agree Appellant could have listed his claims in a more concise manner, and that he should have explicitly stated how the trial court erred or abused its discretion, we are able to discern the issues Appellant wished to raise on appeal. *See Jiricko v. Geico Ins. Co.*, 947 A.2d 206, 210 (Pa. Super. 2008 (explaining Rule 1925(b) statement must be sufficiently concise for court to "be able to identify the issues to be raised on appeal"). Accordingly, we do not find Appellant's claims are waived based on a deficient Rule 1925(b) statement, and, thus, proceed to address the substantive issue raised in his brief.

Appellant's sole substantive claim on appeal challenges the trial court's grant of summary judgment in favor of Appellee. Appellant contends:

> The trial court erred in granting summary judgment where two genuine issues of material fact existed: (i) as to whether the [elective share distribution] was paid [to Racek]; and (ii) whether it is legally possible for an estate attorney to ensure that a surviving spouse is precluded from seeking an elective share[.]

Appellant's Brief at 24.[3] With regard to proof of payment by the Estate to Racek, Appellant notes he attached to his brief in opposition to Appellee's motion for summary judgment a check request form and copy of a cancelled

---

[3] Appellant withdrew a claim that the coordinate jurisdiction rule precluded the trial court from considering the standing issue on summary judgment. Appellant's Brief at 18 n.1.

check, which together demonstrated Racek was paid his elective share. ***Id.*** at 29. ***See also*** Appellee's Brief in Opposition to Appellant's Motion for Summary Judgment, 6/3/19, at Exhibit B. Moreover, Appellant contends "the record is devoid of any assertion by Racek that he did not receive" his elective share payment. Appellant's Brief at 30. Thus, Appellant insists the trial court erred in granting summary judgment "as to the standing and payment issues[.]" ***Id.*** at 31.

With regard to whether he "**could have proven** that Appellee could have prevented the Estate from having to issue" Racek his elective share, Appellant argues Appellee could have advised Decedent to place her assets in an irrevocable trust, which would have valued the "net probate estate . . . at 'zero.'" Appellant's Brief at 31-32. Accordingly, Appellant contends "if given the opportunity through future pleading and motion practice, [he] could have proved that the [elective share payment] could have been prevented." ***Id.*** at 31.

Our standard of review of an order granting summary judgment is well-settled:

> Summary judgment is appropriate where the record clearly demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. No. 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. Whether there are no genuine issues as to any material fact presents a question of law, and therefore, our standard of review is *de novo* and our scope of review plenary.

*Estate of Agnew v. Ross*, 152 A.3d 247, 259 (Pa. 2017) (some citations omitted).

A claim of legal malpractice requires proof of three elements: (1) the employment of an attorney; (2) the failure of that attorney "to exercise ordinary skill and knowledge;" and (3) that the attorney's negligence proximately caused damage to the plaintiff. *Kituskie v. Corbman*, 714 A.2d 1027, 1029–30 (Pa. 1998). *See also Dougherty v. Pepper Hamilton LLP*, 133 A.3d 792, 796 (Pa. Super. 2016) ("A legal malpractice claim based on breach of contract, 'involves (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages.'") (citation omitted). Therefore, "[a]n essential element to this cause of action is **proof of actual loss** rather than a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm." *Kituskie*, 714 A.2d at 1030 (emphasis added).

In the present case, Appellee first asserts Appellant, proceeding only as **executor** of Decedent's Estate, cannot maintain a cause of action for legal malpractice because the Estate did not suffer any "actual economic loss or harm" as a result Appellee's purported malpractice.[4] Appellee's Brief at 17.

_____

[4] We note the trial court did not specifically address the underlying basis for its decision to grant Appellee's motion for summary judgment. Rather, in its June 10, 2019, Order, the court simply stated "summary judgment is entered in favor of [Appellee] . . . for the reasons set forth in the Motion and [Appellee's] supporting Brief." Order, 6/10/19.

A personal representative or executor of an estate has standing to bring suit to enforce "any right or liability" which could have been brought by the decedent if she were alive. 20 Pa.C.S. § 3373. In **Guy v. Liederbach**, 459 A.2d 744 (Pa. 1983), the Pennsylvania Supreme Court considered "whether a named beneficiary of a will who is also named executrix ha[d] a cause of action against the attorney who drafted the will[.]" **Id.** at 746. In that case, the attorney directed the beneficiary/executrix to witness the will; however, "the fact that she witnessed the will voided her entire legacy and her appointment as executrix." **Id.** The Court concluded that, although the legal contract was between the testator and the attorney, the will "clearly manifest[ed] the intent of the testator to benefit the legatee," and "persons who are named beneficiaries under a will and who lose their intended legacy due to the failure of an attorney to properly draft the instrument should not be left without recourse or remedy[.]" **Id.** at 751-752. Accordingly, the Court determined the named beneficiary could maintain an action against the attorney. **Id.** at 752-53.

However, in considering whether an **estate** may bring a legal malpractice claim against the attorney who drafted a will, the **Guy** Court opined:

> In any cause of action for malpractice, some harm must be shown to have occurred to the person bringing suit. In the case of a failed legacy, the estate is not harmed in any way. California, the first state to find a cause of action in malpractice for beneficiaries has held that the executor has no standing to bring an action.

> Indeed, the executor of an estate has no standing to bring an action for the amount of the bequest against an attorney who negligently prepared the estate plan, since in the normal case the estate is not injured by such negligence except to the extent of the fees paid; only the beneficiaries suffer the real loss.
>
> ***Heyer v. Flaig***, . . . 449 P.2d 161, 165 . . . ([Cal.] 1969). Even if the estate would have standing to bring the suit, the fact that no harm had occurred to it and the estate has nothing to gain would remove any incentive for suit.

***Guy***, 459 A.2d at 749.

In the present case, while Appellant brought the action solely as **executor** of Decedent's Estate, he was also a named beneficiary in the will and Trust. As a Trust beneficiary, Appellant could clearly demonstrate he was harmed by Racek's election to take against the will. Indeed, his inheritance was reduced as a result of the payment to Racek. Whether Appellant could also demonstrate that the **Estate** was harmed by Appellee's purported malpractice is unnecessary to our disposition, since we conclude, in any event, Appellant is not entitled to relief with respect to his underlying negligence claim.[5]

In his motion for summary judgment, Appellee argued, *inter alia*, that Appellant "cannot show [D]ecedent's intent was contrary to the express language of the Trust, nor can he show that [Appellee] could have prevented the distribution to Racek altogether." Appellee's Motion for Summary

---

[5] We note that this Court similarly "defer[red] any analysis of the executor standing issue" in ***Jones v. Wilt***, 871 A.2d 210, 214 (Pa. Super. 2005), when the appellant/executor had standing as a third party beneficiary and could not prove his legal malpractice claim under that scenario.

- 11 -

Judgment at 3.  In his brief, Appellant focuses solely on how Appellee could have prevented Racek from taking his elective share.  ***See*** Appellant's Brief at 31-32.  However, he does not address whether he could have proven it was Decedent's **intent** to prevent Racek from doing so.

When considering a testator's intent under a will,

[o]ur Supreme Court has repeatedly stated that

[t]he testator's intention is the polestar in the construction of every will and that intention must be ascertained from the language and s[c]heme of his entire will together with the surrounding facts and circumstances; it is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words.

Technical rules or canons of construction should be resorted to **only** if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain.  An ambiguity in a will must be found without reliance on extrinsic evidence before extrinsic evidence is admissible.  A court may not rewrite an unambiguous will.

***In re Estate of Tscherneff***, 203 A.3d 1020, 1024 (Pa. Super. 2019) (citations omitted).  Moreover, the Supreme Court has made clear that,

in construing a will, **it is not what testator may have meant but the meaning of the language used**.  Evidence of a testator's instructions to the scrivener which alters or adds to the terms of the will is inadmissible. . . . **The intention of testator, however, must be determined from what appears upon the face of the will.**  Extrinsic evidence of surrounding facts must only relate to the meaning of ambiguous word of the will.  It cannot be received as evidence of testator's intention independent of the written words employed.

***In re Beisgen's Estate***, 128 A.2d 52, 54-55 (Pa. 1956) (citations omitted and some emphasis added).

Here, Decedent's will made no provision for Racek, but rather, directed that her entire estate be added to the Trust. Appellant's Complaint at Exhibit B, Decedent's Last Will & Testament, 5/1/98, at 1. As noted above, the Trust provided that Decedent's entire Estate would pass to her children. Appellant's Complaint at Exhibit B, Decedent's Revocable Living Trust, 5/1/98, at 10. However, the Trust also contained a provision benefiting Racek. With regard to the marital residence, which Decedent and Racek conveyed to the Trust while Decedent was still alive, the Trust provided that Racek could live in the residence rent-free, until he remarried or cohabitated, or for one year after Decedent's death, whichever occurred first. *Id.* Pertinently, the provision also stated if Racek "asserts any claim against [Decedent's] estate and Trust, this entire Section [ ] shall be null and void." *Id.*

Accordingly, under the clear language of the Trust, Decedent intended to bestow a benefit to Racek—the right to live, unencumbered, in the martial home after her death. Further, the language of the Trust also recognized that Racek could choose to forgo that benefit and, instead, "assert[ a] claim against [Decedent's] estate." Appellant's Complaint at Exhibit B, Decedent's Revocable Living Trust, 5/1/98, at 10. In such an event, where Racek elects his spousal share, he forfeits the right to live in the marital residence rent-free for one year. That is what exactly Racek did. Therefore, based upon the clear language of the Trust, Appellant cannot show Decedent intended to deprive Racek of his elective share. In fact, to the contrary, the Trust explicitly recognized this right.

Furthermore, we emphasize Racek was **statutorily entitled** to elect to take a one-third share of Decedent's Estate. *See* 20 Pa.C.S. § 2203. Indeed, "[t]he law of Pennsylvania has always conferred upon a surviving spouse specific and substantial rights in the estate of a decedent; the unchallenged policy of the Commonwealth has been to scrupulously protect these rights." *In re Harrison's Estate*, 319 A.2d 5, 7 (Pa. 1974) (footnote omitted). The Supreme Court has explained that in order to "terminate these statutorily-conferred rights," the parties must enter into an agreement, which is either "executed in good faith after full disclosure of the parties' financial condition" or "provide[s] a reasonable amount for the survivor." *Id.* No such agreement exists in the record of the case before us.

Therefore, we conclude the trial court did not err or abuse its discretion in determining there is no genuine issue of material fact in the record, and Appellee is entitled to summary judgment as a matter of law.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/04/2020

- 14 -