J-S20009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF: CAROL L. STONE TEEL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: TODD TEEL | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 33 MDA 2021 |

Appeal from the Order Entered October 7, 2020
In the Court of Common Pleas of Wyoming County Civil Division at
No(s): 2016-00034

BEFORE: NICHOLS, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.: **FILED AUGUST 17, 2021**

Appellant Todd Teel appeals *pro se* from the order that denied his objections and motion to compel and approved an interim account and distribution in this estate matter. On appeal, Appellant contends that the orphans' court erred and abused its discretion in its interpretation of a will and codicil. Following our review, we affirm on the basis of the orphans' court's October 7, 2020 findings of fact and conclusions of law.

A prior panel of this Court summarized the relevant facts and procedural history of this matter as follows:

> Carol L. Stone Teel (Decedent) died testate on February 10, 2016. Pursuant to Decedent's Will, dated October 8, 2009, and subsequent Codicil, dated June 2, 2015, Decedent's heirs were her six children: Tammy Kresege, Deborah Tavernia, David Teel, John Teel, Timothy Teel, and Appellant. The Will named Barbara Fuhrey and William Fuhrey (collectively, co-executors) as co-executors of Decedent's Estate. The primary assets of the Estate included a farmhouse with an appraised value of $125,000.00, a

tenant house and one acre of surrounding land with an appraised value of $115,000.00, the balance of farmland (153.85 acres) with an appraised value of $393,000.00, and the oil, gas, and mineral rights in the real estate, as well as cash and personal property. The Will and Codicil were admitted to probate.

On May 5, 2017, the co-executors filed an interim account and a petition for adjudication/statement of proposed distribution of the Estate's property (proposed distribution). On July 10, 2017, Appellant, Tammy Kresege, and Deborah Tavernia filed objections to the interim account and proposed distribution. Appellant, Tammy Kresege, and Deborah Tavernia filed amended objections to the interim account and proposed distribution on June 6, 2018. Tammy Kresege and Deborah Tavernia subsequently reached a settlement of their personal claims against the Estate and no longer wished to pursue their objections to the interim account and proposed distribution. Appellant, however, continued to pursue *pro se* the objections to the interim account and proposed distribution.

On November 15, 2018, the co-executors filed an amendment to paragraph 9 of the proposed distribution that addressed the oil, gas, and mineral rights in Decedent's real estate. After a hearing on Appellant's objections to the interim account and proposed distribution, the orphans' court ordered Appellant to submit "a list of all assets [he believed] were not properly inventoried as part of the [E]state." Orphans' Court Order, 4/4/19. Appellant filed *pro se* his list of assets with the orphans' court judge's chambers on April 22, 2019.

On June 11, 2019, the orphans' court dismissed Appellant's objections and approved the interim account and proposed distribution of the Estate's property. On July 11, 2019, Appellant filed *pro se* a "motion to compel a complete [interpretation] of [the] Will by [the orphans'] court and stay [its] dismissal and approval of interim account" (motion to compel). This motion to compel bears a timestamp of entry on the docket of July 11, 2019, at 10:15 a.m. Later that same day, Appellant filed *pro se* a notice of appeal of the order entered "the 12th day of July, 2019." A review of the record demonstrates that Appellant intended to appeal the order entered June 11, 2019. The notice of appeal bears a timestamp of entry on the docket of July 11, 2019, at 10:35 a.m.

- 2 -

On July 16, 2019, the orphans' court denied Appellant's motion to compel on the ground that Appellant filed a notice of appeal to this Court, which stayed all matters pending appeal. Orphans' Court Order, 7/16/19. That same day, the orphans' court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 21 days. Appellant timely complied. On October 4, 2019, in lieu of its Rule 1925(a) opinion, the orphans' court entered an order stating that its June 11, 2019 order was not a final order and Appellant failed to request an interlocutory appeal. Orphans' Court Order, 10/4/19.

*Estate of Teel*, 1306 MDA 2019, 2020 WL 1867006 (Pa. Super. filed Apr. 20, 2020) (unpublished mem. at 1-4) (footnotes omitted, some formatting altered).

The prior panel concluded that it had jurisdiction because the order was immediately appealable as an orphans' court order confirming an account, interpreting a will and codicil, and determining an interest in real property under Pa.R.A.P. 342(a)(1), (3), and (6).[1] *Id.* at 6. After review, the panel remanded this matter to the orphans' court "to make findings of fact and conclusions of law with regard to Appellant's issues, specifically resolving the issue of ambiguity with the use of the word 'other' as it appears in the [c]odicil." *Id.* at 9.

On October 7, 2020, the orphans' court made its findings of fact and conclusions of law, denied Appellant's objections and motion to compel, and approved the interim account and proposed distribution. Order, 10/7/20. Appellant filed a timely appeal, and the orphans' court directed Appellant to

---

[1] For these same reasons, we conclude that the order underlying the instant appeal is immediately appealable and that we have jurisdiction in this matter.

file concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed his Rule 1925(b) statement on December 29, 2020. On February 4, 2021, the orphans' court filed a Rule 1925(a) statement relying on and incorporating its October 7, 2020 findings of facts and conclusions of law.

Initially, we note that in his *pro se* brief, Appellant's statement of questions presented spans thirteen pages. However, it bears nearly no correlation to Appellant's Rule 1925(b) statement. It is well settled that any issues not included in a timely filed court-ordered Rule 1925(b) statement are waived on appeal. *M.G. v. L.D.*, 155 A.3d 1083, 1092 (Pa. Super. 2017). Moreover, we note that although the argument portion of Appellant's brief is very broad in scope, it consists of conclusory statements, accusations, and assertions of Appellant's beliefs that are not supported by argument, the record, or relevant legal authority. This Court has stated:

> While this court is willing to liberally construe materials filed by a *pro se* litigant, we note that appellant is not entitled to any particular advantage because he lacks legal training. As our Supreme Court has explained, any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing.

*Branch Banking and Trust v. Gesiorski*, 904 A.2d 939, 942 (Pa. Super. 2006) (formatting altered and citation omitted). "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." *Eichman v.*

*McKeon*, 824 A.2d 305, 319 (Pa. Super. 2003) (citations omitted); *see also* Pa.R.A.P. 2119 (setting forth the requirements for the argument portion of an appellate brief). "When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a Court will not consider the merits thereof." *Branch Banking and Trust*, 904 A.2d at 942-43 (citation omitted). "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem [the] issue to be waived." *Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018) (citation omitted).

Here, the only issue Appellant addressed meaningfully and argued somewhat cogently was the issue concerning the ambiguity in the codicil that was part of the basis for this Court's prior remand. Appellant's Brief (Argument Section, at 1-17). Accordingly, that is the only issue we deem preserved on appeal. *See Milby*, 189 A.3d at 1079; *see also* Pa.R.A.P. 2119.

Appellant states that the codicil made a specific bequest of Decedent's real estate to Appellant's brother David, and then the codicil concluded: "The rest is for the other unless Todd has lost the ground he had given to him." Appellant's Brief (Argument Section, at 4) (verbatim) (quoting Decedent's Codicil, 6/2/15 (verbatim)). Appellant asserts that the trial court erred in concluding that that the reasonable interpretation is that there was a specific bequest to David, and the remainder of the real estate was to be divided among "the other" children of Decedent, *i.e.*, all of Decedent's children other than David. *Id.* at 5-17. Rather, Appellant argues that he alone is "the other"

- 5 -

child, and Appellant should receive all the real estate that was not bequeathed to David.[2] *Id.* at 4, 15.

Following our review of the record, the parties' briefs, and the well-reasoned conclusions of the orphans' court, we affirm on the basis of the orphans' court's findings of fact and conclusions of law. *See* Findings of Fact and Conclusions of Law, 10/7/20, at 1-11. We discern no error of law or abuse of discretion in the orphans' court's decision. Accordingly, we affirm the October 7, 2020 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/17/2021

---

[2] We note that this argument differs from the issue Appellant raised in his Rule 1925(b) statement wherein Appellant asserted that he should receive all of the real estate except the real estate that was bequeathed to David and bequeathed specifically to his siblings in Decedent's will. Rule 1925(b) Statement, at 4. We could find this issue waived because the argument in Appellant's brief differs from his Rule 1925(b) statement. *See M.G.*, 155 A.3d at 1092. However, we are able to glean the crux of Appellant's argument, which focuses on the interpretation of Decedent's use of the word "other," in the codicil bequest.

IN THE COURT OF COMMON PLEAS OF THE 44TH JUDICIAL DISTRICT
WYOMING COUNTY BRANCH – ORPHAN'S COURT DIVISION

IN RE:                            :

    ESTATE OF                    :    NO. OCD-2016-34
    CAROL L. STONE TEEL,         :
    Deceased                     : .

**Brian J. Cali, Esquire – Attorney for David Teel, John Teel and Timothy Teel**
**C.H. Welles, IV, Esquire – Attorney for Barbara Fuhrey and William Fuhrey**
**Todd Teel,** *pro se*

## FINDINGS OF FACT

**Shurtleff, P.J., October 7, 2020:**

1. The Decedent, Carol L. Stone Teel (hereinafter "the Decedent"), died on February 10, 2016.

2. The Decedent left a Will dated October 8, 2009, naming Barbara Fuhrey and William Fuhrey, her sister and brother-in-law, as co-executors.

3. The Decedent also left a Codicil dated June 2, 2015.

4. Both the Will and Codicil were admitted into probate in the Court of Common Pleas of Wyoming County without objection.

5. The Decedent left six (6) children – four (4) sons, David, Tim, John and Todd – and two (2) daughters, Debbie and Tammy.

6. The Decedent's estate consisted a farm of approximately one hundred fifty (150) acres, the house on the farm in which the Decedent lived, another house on the farm in which her daughter Debbie lived, farm equipment, cash of approximately One Hundred Ninety Thousand Dollars ($190,000.00) and various items of personal property.

7. The Will bequeathed real estate to four (4) of her children, namely, the Will bequeathed to Debbie Teel Tavernia "the house where she was living, together with the one (1) acre of land where it is located"; John Teel "one (1) acre of land of his choosing out of my real estate [but] if he elected not to take one (1) acre of land, he shall receive the fair market value of such real estate"; Tammy Teel Kresge "one (1) acre of land of her choosing out of my real estate [but] if she shall choose not to take such land, she shall receive the fair market value of such real estate"; and David Teel "the house in which [the Decedent was then] living, together with the balance of the real estate".

8. The Will further devised equally to all of her children any gas rights and royalties with respect to any real estate she may own at the time of her death and the "rest, residue and remainder" of her estate.

9. The Codicil stated as follows:

> Cheyenne Kresge Johnson gets the hutch and arm chair that goes to the dining room table that I already gave to her. Tammy Tell Kresge gets the old big dresser up stairs that was Grandma Teel's. Debbie Tavernia gets the dresser in Tammy's old room that Barby gave to her years ago and dishes that she wants. She also gets my car if she wants it. If not David can have it. Timmy and David get to keep raising beef in the Barn if they want and also have all hay & feed or sell at their wishes. Because they are the ones that put it up. Also David gets all machinery as it is mainly junk. And he pays for repairs and keeping running. He also fets appliance in house and essentials for housekeeping, furniture ect [sic]. As long as Katryn Pauline Lane Teel has no part of it even if they should marry. He also gets at least 65 acres of ground of his wishes. The rest is for the other unless Todd has lost the ground he had given to him.

10. The Co-Executors filed an Interim Account and Proposed Distribution (hereinafter "the Interim Account") on May 5, 2017.

2

11. Objections were filed to the Interim Account by Todd Teel, Tammy Tell Kresge and Debbie Teel Tavernia on July 10, 2017.

12. On February 5, 2018, Todd Teel, Tammy Teel Kresge and Debbie Teel Tavernia, through counsel filed "Objections to Decedent's Will", specifically requesting that both the Will and Codicil remain in probate.

13. On May 8, 2018, this Court entered an Order directing that the Will and Codicil remain probate and have full force and effect.

14. A second Order was entered on May 8, 2018 giving all parties a period of thirty (30) days from said Order to file any additional and/or supplemental objections to the account and/or proposed distribution.

15. On June 6, 2018, Todd Teel, Tammy Teel Kresge and Debbie Teel Tavernia, through counsel filed "Objections to the Interim Account and Proposed Distribution of Property file May 4, 2017".

16. Thereafter, on or about July 13, 2018, counsel for the three (3) objecting heirs filed a motion to withdraw as counsel for Todd Teel with a rule on the basis that the other two (2) objecting heirs, Tammy Teel Kresge and Debbie Teel Tavernia, wanted to settle the matter but Todd Teel did not.

17. On July 13, 2018, this court entered an Order allowing counsel to withdraw and giving Todd Teel thirty (30) days to secure new counsel, but Todd Teel has proceeded *pro se* since that time.

18. A hearing was held on the objections on November 1, 2018 and a second hearing was held on April 4, 2019.

19. At the November 1, 2018 hearing, the objectos, Tammy Teel Kresge, Debbie Teel Tavernia and Todd Teel testified.

20. It was noted at the hearing by counsel for the Co-Executors that the proposed distribution failed to include the gas rights and residuary related to the real estate for the six (6) children, which was error and the proposed distribution would be, and later was, amended to include this in the distribution. (H.T. 11/1/18, pp. 19-20).

21. Tammy Teel Kresge testified that she did not recall whether or not the guns in the home of the Decedent were given as a gift to her brothers, John and Timothy. (H.T. 11/1/18, pp. 14-15).

22. She further testified that on the date of her mother's death there was a checking account with Seventy-Seven Thousand Three Hundred Dollars and Four Cents ($77,300.04) held jointly with right of survivorship held in her and her mother's name. (H.T. 11/1/18, pp. 10-11).

23. From that account, Ten Thousand Four Hundred Seven Dollars and Ninety-Nine Cents ($10,407.99) was utilized to pay for the Decedent's funeral expenses. (H.T. 11/1/18, p. 14).

24. Debbie Teel Tavernia also testified that she did not know whether or not the guns were given as a gift to her brothers either and does not recall her mother or father utilizing any of the guns after 1994. (H.T. 11/1/18, p. 32).

25. Todd Teel testified that he objection to the Interim Account because it did not list "tools", "hay" and "haylage in the silo", "sheds, all your – all the times that would go along with a farm". (H.T. 11/1/18, p. 44).

4

26. Todd Teel further testified that he objected that:

   a. The personal representatives failed to account for the "practical ramifications of their proposed distribution". (H.T. 11/1/18, p. 45);

   b. That the Codicil states "David gets 65 acres of ground" and the definition of "ground" is different than "land in real estate". (H.T. 11/1/18, p. 45);

   c. That neither the Will or the Codicil "give [David} the barn and he really questions whether it gives him the house". (H.T. 11/1/18, pp. 45-46);

   d. That Tammy, not David, gets the first choice of real estate. (H.T. 11/1/18, p. 46);

   e. "90 percent of the personal property" was not account for. (H.T. 11/1/18, p. 46);

   f. David and Timothy were allowed to continue to operate the farm and have not paid rent. (H.T. 11/1/18, p. 46);

   g. The guns were not gifted to David, John and Timothy. (H.T. 11/1/18, p. 48);

   h. The Co-Executors failed to address a loan of $5,000.00 the Decedent made and failed to recoup or attempt to recoup the loan. (H.T. 11/1/18, p. 48);

   i. The Codicil gives David "all machinery" and what is "machinery" has to be distinguished. (H.T. 11/1/18, pp. 49-50).

27. At the April 4, 2019 hearing, Barbara Fuhrey, one of the Co-Executors, along with David Teel testified.

28. Barbara Fuhrey testified that she saw the guns in the home where the Decedent resided with her son, David, and was told that they were a gift to John Teel that was

made prior to his father (the Decedent's husband) passing away. Other than being told the guns were a gift, she had no other information regarding that gift. She was told the guns were left at the house because that is where John hunts. (H.T. 4/4/19, pp. 14-15, 29, 47).

29. The farm equipment and machinery were appraised and the Co-Executor determine that equipment and machinery on a farm are the same. (H.T. 4/4/19, pp. 15, 30-31, 46, 89).

30. Under the Codicil, the farm equipment was to go to David because he was running the farm after his father died and he put "a lot of money into the farm equipment and stuff to keep it going" according to the Decedent. (H.T. 4/4/19, p. 16).

31. David has been raising beef cattle and has been living on the farm. (H.T. 4/4/19, p. 16).

32. The estate did not collect rent from David Teel or Debbie Teel Tavernia. David was only farming the 65 acres he was to receive under the Will and Codicil because that is the land he was inheriting and he did not know whether he could farm the other land. Barbara Fuhrey believed because David Teel was being given the house, the farm and raising animals on the farm, and Debbie Teel Tavernia was living in the house at the time of Decedent's death and was inheriting the house, that they were allowed to continue to do the same after her death without rent which is what they did. (H.T. 4/4/19, pp. 16, 32, 41-42, 72).

33. Under the Codicil, David Teel's sixty-five (65) acres was to be chosen first and it was the Decedent's intent that this include the farm improvements affixed thereto.

6

34. Pursuant to the Codicil, David Teel is entitled to household items of his choosing in the house, specifically "He also gets appliances in house and essentials for housekeeping, furniture ect [sic]."

35. A survey used at the hearing showed a dirt road that was next to Debbie Teel Tavernia's inherited house, which road was always used to get to the back fields of the farm. That road is on the sixty-five (65) acres David Teel received. (H.T. 4/4/19, pp. 19, 38-39).

36. Co-Executors learned of a loan Decedent gave to Kelly Teel in the amount of Five Thousand Dollars ($5,000.00) that was given during the Decedent's lifetime and was told that it was paid, and had no proof that it was not paid back. (H.T. 4/4/19, pp. 9-10, 72-73).

37. The cows were not part of the Decedent's estate since they belonged to David and Timothy Teel. (H.T. 4/4/19, p. 56).

38. The estate continued to pay taxes on the farm because the property had not been turned over to the children and, thus, the property was still in the name of the estate. (H.T. 4/4/19, pp. 4-15, 70).

39. The Codicil gave all the hay to Timothy and David Teel, so when hay was sold in 2016, the proceeds of the sale was not part of the estate because that hay was to go to Timothy and David who produce it. (H.T. 4/4/19, p. 71).

40. The sheds and barn on the farm were part of the farm and, therefore, what was contained therein was part and parcel of the appraisal the Estate obtained.

41. At the April 4, 2019 hearing, there was a stipulation that the Decedent's husband, Glenn Teel, made a Will which had "no reference to the weapons" with the

7

understanding that the testimony was that the Decedent's husband gave the weapons as a gift to John during his lifetime. (H.T. 4/4/19, p. 101).

42. David Teel testified that he purchased the animals on the farm and raised them, and it had nothing to do with the Decedent. (H.T. 4/4/19, pp. 107-108).

43. It was the Decedent's intent that after specific gifts, her estate was to go to her children in equal shares which is signified in the Codicil by the gift of the remaining real estate to "other" children – other than David, gifting the gas rights to all children and giving the residue of her estate to all children.

## CONCLUSIONS OF LAW

1. It has long been the law in Pennsylvania that to the extent a codicil alters a will, the codicil prevails. In *In re Elkins' Estate*, 12 A.2d 83, 86 (Pa. 1940), our Supreme Court found that that the purpose of a codicil is to "alter or modify the will, and hence if there is any conflict the provision in the codicil must prevail." *See also*, *In re Harris*, 41 A.2d 715, 727 (Pa. 1945) holding "[a]s the purposed of a codicil ordinarily is to modify or add to, and not revoke, it is only permitted to change the will to the extent that it is inconsistent with it."

2. It is the testator's intent that must prevail. *Sumney's Estate*, 228 A.2d at 919.

3. "The very purpose of a codicil is to alter or modify the will, and hence if there is any conflict the provision in the codicil must prevail ... Where the testator's purpose is clear, we cannot by any rule of construction restrict the codicil to a meaning which would frustrate its intendment." *Foster's Est.*, 324 Pa. 39, 44, 187A. 399 (Pa. 1936).

8

4. The Last Will and Testament and the holographic Codicil of Carl L. Stone Teel was properly admitted into probate.

5. The Will gave David Teel the house in which the Decedent was living and the Codicil bequeathed to David Teel "at least 65 acres of ground of his wishes".

6. As such, David Teel's choice of location of his property has priority over the choices of others since it is set forth in the Codicil.

7. Todd Teel has no interest with respect to the location of property lines of the properties devised to David, Debbie or Tammy, and as such, he is not an aggrieved party with the right to object thereto.

8. The Interim Inventory properly listed David Teel as receiving the house and the sixty-five (65) acres.

9. Under the Codicil David Teel is entitled to household items of his choosing in the house, which he has taken. The Codicil states "[h]e [David] also gets appliances in house and essentials for housekeeping, furniture ect [sic]."

10. The actions of the Co-Executors in not taking further action with respect to the household goods was entirely appropriate, other than delivering those items specifically bequeathed to the appropriate persons as specified in the Will and Codicil.

11. Barbara Fuhrey, one of the Co-Executors, gave competent testimony at the hearing.

12. The finding by the Co-Executors that all firearms were gifted prior to the death of the Decedent and that the firearms were not part of the Estate was appropriate.

13. The finding by the Co-Executors that the beef, hay and farm equipment belonged to David and Tim, and the income from the farm operation during administration was to go to them rather than the Estate, was appropriate.

14. The finding by the Co-Executors that the loan to Kelly Teel was repaid prior to death was appropriate.

15. Occupancy by David Teel of the farm and home and Debbie in the home is permissible under the terms of 20 Pa.C.S. §3311, which states "[a] personal representative shall have the right to and shall take possession of, maintain and administer all the real and personal estate of the decedent, except real estate occupied at the time of death by an heir or devisee with the consent of the decedent."

16. The Codicil states the "He [David] also gets at least 65 acres of ground of his wishes the rest is for the other unless Todd has lost the ground he had given to him".

17. Ambiguity means the quality of being understood in more than one way, or having more than a single clear meaning. *See*, Merriam Webster Dictionary.

18. A patent ambiguity arises if a document is susceptible of more than one interpretation. *In re Estate of Beisgen*, 387 Pa. 425, 128 A.2d 52, 55 (1956); *Krizovensky v. Krizovensky*, 425 Pa.Super. 2014, 624 A.2d 638, 643 (1993); *In re Estate of Tscherneff*, 2019 Pa.Super. 25, 203 A.3 1020 (2019).

19. The use of the work "other" in the Codicil is not a patent ambiguity because there is not a logical or reasonable alternate interpretation than that it refers to her children other than David and is consistent with the Decedent's intent that the balance of her farm to go to her "other" children other than David.

10

Based upon the foregoing, the Objections of Todd Teel are **DENIED,** the Motion to Compel filed by Todd Teel is **DENIED** and the Interim Account and Proposed Distribution shall be **APPROVED.**

**BY THE COURT:**

_____, P.J.
Russell D. Shurtleff,
President Judge

cc:
Brian J. Cali, Esquire
Brian J. Cali & Associates
103 East Drinker Street
Dunmore, PA 18512

C.H. Wells, IV, Esquire
321 Spruce Street, 7th Floor
Scranton, PA 18503

Todd Teel
142 Beech Lane
Falls, PA 18615

11